FILED

U. S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

# THE UNITED STATES DISTRICT COURT

JAN 2 2 2024

## EASTERN DISTRICT OF TEXAS

Ray; Jasmine, Beneficiary, in special appearance
p/a/k/a JAZZY FOSHO
ATTORNEY IN FACT

BY
DEPUTY

PLAINTIFF,
VS

CASE NUMBER: 1:24 cv 25

PROCTOR AND GAMBLE, ("P&G")
SAATCHI & SAATCHI NY
SCREEN ACTORS GUILD ("SAG-AFTRA" or "SAG")
EXTREME REACH PAYROLL SERVICES
CAPS, INC
SCREEN ACTORS GUILD BOARD OF TRUSTEES("THE BOARD)
SCREEN ACTORS GUILD HEALTH PLAN BOARD("THE PLAN")
AFM-SAG-AFTRA
B-REEL, LLC
GAMUT CAPITOL MANAGEMENT
PUBLICIS GROUP,INC
GALLAGHER-BASSET LAW FIRM
ATX ORTHO; STEEN CHIROPRATIC AND PHYSICAL THERAPY

INDIVIDUALS IN CAPACITY

**INDIVIDUAL DEFENDANTS:**
JOHAN PERJUS; DAVID WOLFSON; CHRISTOPHER ROGERS; KATIE TULL;
VANESSA GAITAN; PETE SIMONTE; MATT KING; DON HOWE;
SAM PEARCY; SHANNON COOK; AARON STADLER; MELANIE FERGUSON;
⠀⠀⠀CHRISTOPHER ROGERS, MICHAEL MOBLEY
SARAH WANEZEK; ERIKA SLAY; LUCY SANTAMASSINO; GUY RAGANS;
DARCY BLOOM; GEORGE DISHNER; GARRET DANKS; MARTIN PEDERSON;
TIFFANY CHUNG; M MOBLEY; VAN NGUYEN; EVAN WORLEY;
CHRIS SYNOGROUND; MEGAN SATURLEY; SHEILA WILK ROSENBERG;
TRACY HYMAN; CHRIS SYNOGROUND; MEGAN SATURLEY;
SHEILA WILK ROSENBERG; TRACY HYMAN; JESSICA VASQUEZ;
WALESKA RIVERA; ALVIN CHAVIS; MORGAN TENNANT; JUSTIN TOURETZ;
PHIL WEIS; AMANDA BARLOW; LAURA LEWIS; SEAN GALLAGHER, MD;
TRISH AVERY; KATHRYN MOORE; KENNETH STEEN;
STEEN CHIROPRACTOR AND PHYSICAL THERAPY, LLC;
JON MOELLER; SHALIESH JEJURIKAR; DAVID S. WHITE; STEVEN D. BISHOP;
GIOVANNI CISERANI; CAROLYN M. TASTAD; MARK F BIEGGER;
DEBORAH P. MAJORAS; MARC S. PRITCHARD; VALERIE L. SHEPPARD;
B. MARC ALLEN; BRETT BIGGS; SHEILA BONINI; ANGELA F. BRALY;
AMY L. CHANG; JOSEPH JIMENEZ; CHRISTOPHER KEMPCZINSKI;
DEBRA L. LEE; TERRY J. LUNDGREN; CHRISTINE M. McCARTHY;
ASHLEY McEVOY; ROBERT J. PORTMAN; RAJESH SUBRAMANIAM;
PATRICIA A. WOERTZ; VOGT; DARYL ANDERSON; IHLANE ANTLER;
AMY AQUINO; J. KEITH GORHAM; JIM BRACCHITTA; JAMES HARRINGTON;
ROBERT W. JOHNSON; JOHN CARTER BROWN; DUNCAN CRABTREE-IRELAND;
SHELDON KASDAN; BARRY GORDON; ALLAN LINDERMAN;
DAVID HARTLEY-MARGOLIN; CAROL A. LOMBARDINI; MICHELLE HURD;
STACY K. MARCUS; LYNNE LAMBERT;DIANE P. MIROWSKI; JODI LONG;
STEPHANIE MOTHERSHED; RICHARD MASUR; PAUL MURATORE;
JOHN T. McGUIRE; MARC SANDMAN; ARIANNA OZZANTO; TED SINCLAIRE;
⠀MICHAEL PNIEWSKI; KIM STEVENS; LINDA POWELL; LARA UNGER;
RAY RODRIQUEZ; DAVID WEISSMAN; SALLY STEVENS; RUSSELL WETANSON;
NED VAUGHN; TRACEE WILKINS; COLLEEN WILLIAMS; GABRIELLE CARTIS;
FRAN DRESCHER; LINDA POWELL; JOELY FISHER; EZRA KNIGHT;
MICHELE PROUDE; SUZANNE BURKHEAD; SHARI BELAFONTE;
DIANA ROYLSTON; BOB BUTLER; SEAN ASTIN; JANE AUSTIN;
MYKLE McCOSLIN; SHERYL LEE RALPH; MALIBS DUNN; HEIDI YOUNG;
MICHAEL VIERA; REBECCA DAMON; MICHELLE A. ROBINSON;
TOM SCHWARZ; PAMELA GREENWALT; MARISA LEAL;
TONY FILSON; TINO GAGLIARDI; DAVE POMEROY; DAN NAVARRO;
PAT COIL; JANICE PENDARVIS; SIDNEY TAUB; LEI BOWEN; ERIC COWDEN;
⠀COLIN GILBERT; JULIE SANDELL; CYNTHIA SANCHEZ;
MARILYN SWICK; PAT PEREZ; CORT L. HESSLER; PETER "DRAGO" TIEMANN;
STEPHANIE ALLAIN; DONALD DE LINE; SUSAN SPRUNG; MIKE YARBRO;
CHRISTOPHER ROGERS, MICHAEL MOBLEY

COMPLAINT FOR EQUITABLE RELIEF FOR:

1.)  VIOLATION OF TITLE VII OF THE

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

2.)  VIOLATION OF TEXAS LABOR CODE
TEX. LAB. CODE § 21.051

3.)  VIOLATION UNDER THE TEXAS PAYMENT

of WAGES ACT

4.)  VIOLATION OF TEXAS LABOR CODE
§ 21.141; § 21.08 §42.01

5.)  VIOLATION OF AMERICANS with DISABILITIES
ACT of 1964 AND 1991, SEC. 504
REHABILITATION ACT of 1973

6.)  VIOLATION OF TEX. LAB. CODE 4008.001

7.)  VIOLATION OF EMPLOYEE RETIREMENT
INCOME SECURITY 29 U.S.C. 1001 et. SEQ

8.)  VIOLATION OF TEXAS MEDICAL RECORDS
PRIVACY ACT and HEALTH INSURANCE
PORTABILITY and ACCOUNTABILITY ACT

9.)  VIOLATION OF BUSINESS and COMMERCIAL
CODE SEC. 521.051 TITLE 11 SUB. B

10.)  VIOLATION OF TRADEMARKS UNDER
SEC. 43 of the LANHAM ACT 15 U.S.C. 1125(A);
§26 (VERNON1987) MISAPPROPRIATION and
THEFT, UNJUST ENRICHMENT ; TEXAS UNFAIR
COMPETITION LAWS UNDER TEXAS
DECEPTIVE TRADE PRACTICES TITLE 5. SUB
SECT. C CHAP. 541 SUB. And TITLE 2 C.h
17.46; TEXAS COMMON LAWS OF UNJUST
ENRICHMENT, RIGHTS OF PRIVACY and RIGHTS
OF PUBLICITY

11.)  VIOLATIONS OF THE TEXAS WHISTLE BLOWER
ACT 554;  41 U.S.C. §4712

12.)  VIOLATION OF TEX. LAB. CODE LAB § 52.031
BLACKLISTING, BREACH OF CONTRACTS

13.)  VIOLATION OF 28 U.S.C. § 4101 DEFAMATION

14.)  VIOLATIONS OF RACKETEERING INFLUENCED
and CORRUPT ORGANIZATIONS

15.)  GRAND LARCENY TEXAS PENAL CODE TITLE 7,
CHPT. 31

16.)  VIOLATION OF SECURITY EXCHANGE COMMISSION

SEC. 50-151.4; TEXAS SECURITIES ACT, TITLE 19, 581-29

CAUSE NUMBER: _____

I.    ATTEMPT TO SECURE COUNSEL:

  A. In the preparation for this suit, I, Plaintiff, Ray; Jasmine, Beneficiary, have attempted to secure counsel through the aid of an attorney as follows:

   1. Employ Counsel

 B. Names and Addresses of the attorney(s):

  1. National Women's Law Center, legalnetwork@nwlc.org, 1350 St. NW Suite 700, Washington, DC 20005, 202-588-5180

  2. TIME'S UP Legal Defense Fund, Catlin Lowell, Program Coordinator of the Legal Network for Gender Equity, National Women's Law Center, 1100 Dupont Circle, NW suite 800, Washington, DC 20036

  3. Jose Casal, 305-789-7713, 701 Brickell Avenue Suite 3000, Miami, Florida, 33131 jose.casal@hklaw.com

  4. Paige Sparks, 636-373-9375, 2025 Zumbehl Road, St. Charles, Missouri 63303, paige@sparks-legal.com

  5. H Julian Frachtman, 832-785-8292, 3100 Richmond Avenue #203, Houston, Texas 77098, info.hjfrachtmanlaw@gmail.com

  6. Jefferson Fisher, 409-449-6041, 560 South 4th street, Silsbee, Texas 77656

 C. Results of the conference(s) with counsel:

  1. Intake application accepted; received auto response. No further correspondence

  2. Intake application completed; review of details; claimed not a specific area they work

  3. Not licensed in Texas to practice; gave referral to H J Frachtman

  4. Email introduction with referral; H J Frachtman requested EEOC charge document; request fulfilled VIA EMAIL, same day of 12/01/23; no further response or correspondence

  5. Denied request for consultation/representation

II. PREVIOUS LAWSUITS:

 A. No lawsuits have been previously filed in state or federal court(s) dealing with the facts or same facts involved in this action or any other incidents in relating to the claims set forth herein.

CAUSE NUMBER: _____

### III.    PARTIES TO THIS SUIT:

PLAINTIFF:

A.    NAME:
Ray; Jasmine, Beneficiary, a/k/a "Jasmine Ray", "JASMINE RAY",
p/a/k/a  "JAZZY FOSHO"

B.    ADDRESS:
Domicile: 901 12th Street, #188, Hempstead, Texas [77445] (rural general)

C.    STATUS:

¶    At time of material for filing of this complaint, Ray; Jasmine, Beneficiary, in special appearance, to handle these matters efficiently and justly, as the SOLE BENEFICIARY, ATTORNEY IN FACT, of presented and named Plaintiff, "JASMINE RAY", and "JAZZY FOSHO", for the Estate of Tennison; Jasmine-Ray, Beneficiary.

¶    WHERE AS jurisdiction concerning "JASMINE RAY" is specifically and only granted in *major sur juris,* for purposes of this complaint and its outcome of judgment;

¶    WHERE AS having state and federal authenticated records of being a living woman, having been born alive, female with she/her pronouns, and of protected person's heritage and DNA, having both biological parents present at berth, now being age of majority, domiciled of the lands and soils of The Republic of Texas, with receipt of full faith and credit, being of good standing and honorable stewardship, and whereby enters the Private Sector, operating in trust and equity only, once judgment on this complaint has been obtained and enforced.

¶    WHERE AS BEING non belligerent, non-combative, and competent;

WHEREIN PLAINTIFF STANDS as a friend of the court, and in so, respectfully, reserves all rights and preserves said rights intact throughout the proceedings of this complaint, and waives no rights;

¶    AND IN WHOM makes no request to join or adjoin into any additional contracting, whether unknowingly, unwillingly, or implied without verbal disclosure and consent, other than that contracting for the sole purposes of being awarded damages, relief, and judgment, and for that of recording the events of fact on public record and recovering just and equitable remedies, relief, damages, surcharges, fees, punitive, exemplary, and all lawful recourse that this Court so deems appropriate.

¶    IT IS HEREBY, now, PLAINTIFF, evokes the Common Laws of the Republic, of which govern thy soul, to handle these affairs, including having the Courts administer this complaint expeditiously, and according to the

CAUSE NUMBER: _____

laws statutory, civil, or criminal that govern the jurisdictions of DEFENDANTS, including those of whom acted in individual capacities.

¶    Let the record reflect that Ray; Jasmine, Beneficiary shall not be seen or construed as "representative" or "trustee" of the Estate aforementioned in this paragraph. Relief shall be directed to the name of "JASMINE RAY" or "Jasmine Ray", as to be receivable of lawful monies and or currency granted in relief and recovery as so granted by this Court.

D.    STANDING:

¶    PLAINTIFF, being party to this complaint, being a friend of the Courts, being a direct party of the contracts in question here within, where in being the sole holder in due course, has full authority to act as Sole Beneficiary of all said claimed, implied or express trusts and/or estate including such property, securities, equities, bonds, values, credits, and other such property of any value, commercial, financial holdings, along being associated with Ray; Jasmine, Beneficiary SSN xxx-xx-7062;

¶    AND WHERE AS those joining authorities and benefits of such above mentioned associated with "JAZZY FOSHO", whereas, PLAINTIFF, being the sole creator of "JAZZY FOSHO", having credentials of membership under such name in Screen Actors Guild and American Federation of Television and Radio Artists, member number #: ▮▮▮▮▮▮;

¶    WHERE AS PLAINTIFF being a protected person through recorded genealogy, heritage, genetics, and DNA records, and as such brings forth this suit as equitable title holder, in which requires this Court to take note of Title of Right and Bill of Equity, to administer penalties, fines, fees, and imprisonment where appropriate for such DEFENDANTS whom trespassed, against these such Estates and Trust;

¶    WHERE AS THIS suit is presented to this Court, to deliver proportionately fair, equitable, favorable award judgment to PLAINTIFF;

¶    WHERE AS if ever only presenting in special appearance, as one whom is at the age of majority, being of full faith and credit, standing in honor;

¶    At times of material, Jasmine Ray were authorized to license to Proctor and Gamble the image

and professional services of JAZZY FOSHO, who was a party and intended beneficiary of the subject

transactions and agreements.

E.    AGENCY:

¶ At times of material, Plaintiff, "Jasmine Ray", WHEREIN Ray; Jasmine, Beneficiary, in special

appearance, also professionally known as, "JASMINE RAY", "JAZZY FOSHO", IS THE SOLE REGISTERED AGENT,

authorized to act for, administer, execute, license, and extend or deny rights to and for such as including but not limited to

the images, principle photography, stunt performances, expressions, mannerisms, motion pictures, likeliness, name, and

other professional services of JAZZY FOSHO, a public figure media personality, being a professional union member of

and having previous public recognition;

¶ Being intended beneficiary of the principle contract for advertisement commercial purposes, with a union

member number often substituted for SSN to track such items as bonds and securities, earnings, credits, employment history

negotiable instruments and other identifiable data, who was party and intended principle of the subject transactions and or

commercial contracting or agreements of the commercial advertisement produced for Proctor and Gamble brand TIDE

LAUNDRY DETERGENT, "TIDE: BRANDWAGONS", "TIDE: LOADS OF HOPE".


¶        WHERE AS "JAZZY FOSHO", as created solely by PLAINTIFF, before the Initiation of Union

Membership to DEFENDANTS, SCREEN ACTORS GUILD AND AMERICAN FEDERATION of

TELEVISION and RADIO ARTISTS, the public figure and persona of "JAZZY FOSHO".

¶        "JAZZY FOSHO" is a direct equitable property, bonded stock, trademark and copyright
protected including but

not limited to, all entity authorities and powers, name, body structure, genetic distinctions, appearance, likeliness,

images, voice, essence(s), and performances of the Express Trust and Estate, of Ray; Jasmine-, Beneficiary, whom

holds sole powers to negotiate any, all, or no rights of: publicity, appropriation, usage, and distribution of

likeliness, image, voice, or performance, and all equitable titles and benefits created by and therefore within the use of

JAZZY FOSHO. These rights were explicitly violated by the Defendants, as detailed in this complaint.

CAUSE NUMBER: _____

**F.**    **DEFENDANTS:**

**NAMES, ADDRESSES, COMPANY, CONTACT**

1.    A.    SCREEN ACTORS GUILD – AMERICAN FEDERATION of TELEVISION and

RADIO ARTISTS, SCREEN ACTORS GUILD – AMERICAN FEDERATION of VISION and RADIO p/a/k/a,

"SAG-AFTRA", "SAG" and/or "The Union";

B.    SAG-AFTRA BOARD OF DIRECTORS, SAG-AFTRA HEALTH PLAN BOARD MEMBERS,

"THE BOARD", "THE PLAN", is An E.R.I.S.A. Plan,and a tax exempt corporation filed under Internal Revenue

Services as a 501(c)(5) entity, with it's principle office of business at: 5757 Wilshire Boulevard, 7th floor, Los Angeles,

California, 90036. phone: 855-724-2387. Email: info@sagaftra.com. The associated Employer Identification Numbers

are: 95-3967876 and 45-4931719, AND 95-6024160. It regularly conducts business in most states domestically,

foreign, and internationally with over 1000 employees.

2.    A.    Proctor & Gamble Company, a/k/a/ "Proctor &Gamble"," P&G", Proctor and Gamble also known

as, "P&G", "PG&E" is a corporation with its principle place of business is: One Proctor and Gamble Plaza,

Cincinnati, Ohio, 45202. Phone: 513-983-7695 . Employer Identification Number: 31-0411980

(NASDAQ: PG) is the manufacturer of the Tide Laundry Detergent Brand and it's stock is publicly traded. It employs

more than 1000+. It regularly conducts business in all 50 domestic United States, incl ding Puerto Rico, and other

territories including several domestic, global and foreign markets.

B.    Defendant Proctor and Gamble International Funding SCA, an in direct wholly owned finance

subsidiary of Proctor and Gamble, which conducts no independent operations other than its financial activities. PGIF

principle offices are located at: Twenty- Six Boulevard Royal, L-2449 Luxembourg and telephone number is: 00-352-

22-99-99-5241

3.    Defendant SAATCHI & SAATCHI, NY is a global advertising agency with offices in over 80 countries,

including the United States, with its primary place of business is: 1675 Broadway, New York, New York

10019 and 375 Hudson Street, New York, New York 10014. Phone number is: 212-463-2000 Employer Identification

Number is: 133341336.

4.      DEFENDANT, PUBLICIS GROUPE SA (Publicis) is the world's third largest advertising holding

company based on reported revenue, with principle offices:133 Avenue des Champs-Elysees, 75008 Paris, France and

375 Hudson Street New York City, New York 10014, Publicis Groupe regularly conducts business in

the United States and some 80+ countries. Employer Identification Number: 13-2750485. It employs more than

1000+ employees. It is the "Parent company" of Subsidiaries, Defendant Proctor & Gamble and Saatchi & Saatchi,

NY.

5.  DEFENDANT , B-REEL, LLC, is a private creative agency specializing in television and commercial production with

primary office at: 33B Washington Street, Brooklyn, New York 11201. Phone number is: 212-966-6186. Employer

Identification Number is: 26-0692348. It employs more than 100 employees.

6.      DEFENDANT,  EXTREME REACH AND TALENT PARTNERS, is a corporation that conducts payroll services

for Television, Film, and Radio Union Performers, with primary place of business at: 75 2nd Avenue, Suite 720,

Needham, Massachusetts 02494. Employer Identification Number is: 26-0295932. Phone number is: 800-324-5672.

7.      DEFENDANT GAMUT CAPITAL MANAGEMENT IS A PRIVATE INVESTMENT FIRM

MANAGING 1.5 Billion in assets on the middle market. Primary place of business is: 250 West 55th Street, 36th floor,

New York, New York 10019. Phone number is: 212-309-2600, 212-309-2626. Employer Identification Number is: 98-

1654201.

8.      DEFENDANT, GALLAGHER BASSETT SERVICES, INC, a/k/a/ ARTHUR J. GALLAGHER & CO.", is a

Foreign Profit Corporation engaging in claims and risk management. Principle place of

business being 2850 Golf Road, Rolling Meadows, Illinois 60008 secondary address: Two Pierce Place, Itasca, Illinois

60143-3141. Phone number is: 630-773-3800. Employer Identification Number is: 36-2151613. It employs more than

5000 employees.

9.      DEFENDANT, CAPS LLC, 818-848-6022. This company provides entertainment payroll services and

software(s) as well as specializing in production payroll, processing, national agreements, health, welfare, pension,

wage, and hour law. Located in the United States.  The principle office is located at:2300 Empire Avenue, 5th

floor, Burbank, California 91504.  The Employer Identification Number is: 27-4217142. This company employs between 200-500 employees.

10.    DEFENDANT STEEN CHIROPRACTIC and PHYSICAL THERAPY, LLC, NPI NUMBER: 1609050160, 940-390-2217, 520 West Brown suite D, Wylie, Texas, 75098, last known address and contact; permanently CLOSED.

11.    DEFENDANT ATX ORTHOPEDICS, 3901 MEDICAL PARKWAY SUITE 301, AUSTIN TEXAS 78756, 512-960-4590,  info@atxortho.com, NPI: 1477744654,

    ¶    Pursuant to **Fed. R. Civ. P. 5.2(a) and Fed. R. Crim. P. 49.1(a)(b)**, some sensitive information has been redacted.

9.    <u>INDIVIDUAL DEFENDANT(S):</u>

    1.    JOHAN PERJUS, Director, No Contact Information available

    2.    DAVID WOLFSON, Producer, 818-371-5678

    3.    CHRISTOPHER ROGERS, Production Supervisor, 713-501-6025

    4.    KATIE TULL, 1st Assistant Director ("1st AD"), 512-633-0444

    5.    VANESSA GAITAN, 2nd Assistant Director ("2nd AD"), 512-808-8318

    6.    PETE SIMONTE, Director of Picture ("DP"), 512-633-2928

    7.    MATT KING, 1st Assistant Camera ("1st AC") - A CAM, 214-293-6332

    8.    DON HOWE, 1st Assistant Camera ("1st AC") - B CAM, 512-789-5949

    9.    SAM PEARCY, 2ND A    ssistant Camera ("2nd AC"), 512-751-8319

    10.    SHANNON COOK, Digital Imaging Technician ("DIT"), 512-751-3456

    11.    AARON STADLER, Prop Master, 512-826-7996

    12.    MELANIE FERGUSON, Lead Set Dresser, 512-751-4902

    13.    SARAH WANEZEK, Head Wardrobe, 512-788-7101

    14.    ERIKA SLAY, Wardrobe Assistant, 512-417-7793

    15.    LUCY SANTAMASSINO, Makeup, 512-589-5829

    16.    GUY RAGANS, Set Dresser, 512-731-6660

    17.    DARCY BLOOM, Set Dresser, 512-971-4358

    18.    GEORGE DISHNER, Set Dresser, 512-784-2147

19.    GARRET DANKS, Video Assistant Operator, 479-409-3260

20.    MARTIN PEDERSON, Sound, 512-690-6261

21.    TIFFANY CHUNG, Script Supervisor, 214-676-4836

22.    M MOBLEY, Production Assistant, 214-676-4836

23.    VAN NGUYEN, Productoin Assistant, 832-794-5087

24.    EVAN WORLEY, Production Assistant, 503-929-0300

25.    CHRIS SYNOGROUND, Production Assistant, 509-205-9606

26.    MEGAN SATURLEY, Production Assistant727-515-0120

27.    SHEILA WILK ROSENBERG, SAG-AFTRA Executive Assistant and Membership Coordinator, sheila.rosenberg@sagaftra.org

28.    TRACY HYMAN, National Director for SAG-AFTRA, tracy.hyman@sagaftra.org

29.    JESSICA VASQUEZ, Senior Manager of Entertainment Contracts for SAG-AFTRA, jessica.vazquez@sagaftra.org

30.    WALESKA RIVERA, Business Representative Manager for Commercial Contracts Sag-AFTRA, 305-663-7090, waleska.rivera@sagaftra.org

31.    ALVIN CHAVIS, Senior Manager of Cashiers, Membership dues, and Finance for SAG-AFTRA, 310-709-7208, alvin.chavis@sagaftra.org

32.    MORGAN TENNANT, Executive Director of Customer Experience SAG-AFTRA, morgan.tennant@sagaftra.org

33.    JUSTIN TOURETZ, Counsel SAG-AFTRA, 212-863-4211, justin.touretz@sagaftra.org

34.    PHIL WEIS, Attorney, 212-620-0935, phil@fridmanlawgroup.com, 169 Bowery New York, New York, 10002

35.    AMANDA BARLOW,, Resolution Associate Level II, Gallagher Bassett, 972-728-1116, amanda_barlow@gbtpa.com

36.    LAURA LEWIS, 972-728-1088, laura_lewis@gbtpa.com, Senior Charity Branch Manager, Gallagher Bassett

37.    SEAN GALLAGHER, MD, Orthopedic Surgeon, 3901 Medical Parkway Suite 301, Austin, Texas 78756, 512-960-4590, atxortho.com, info@atxortho.com,  NPI: 1477744654

38.    TRISH AVERY, 214-363-8300 EXT 2, trish.avery@sagaftra.org,

39.    KATHRYN MOORE, a/k/a "KATHRYN TRACE", "KAT", ktrace9@gmail.com, At'mosphere Casting,

40.    KENNETH STEEN, Chiropractor, 520 West Brown Street suite D, Wylie, Texas, 75098, last known address and contact

41.    STEEN CHIROPRACTOR AND PHYSICAL THERAPY, 972-442-7401, LAST KNOWN ADDRESS AND CONTACT

42.    JON MOELLER, Chairman, President and CEO Proctor and Gamble P&G, moeller.jr@pg.com,, Former Cheif Financial Officer 2016

43.    Shaliesh Jejurikar, Cheif Operating Officer, Procator and Gamble, P&G, jejurikar.s@pg.com

44.    DAVID S. WHITE, Chairman of the board, President and Cheif Operating Executive 2016-2022,

45.    STEVEN D. BISHOP, Group President-Group Health Care,

46.    GIOVANNI CISERANI, Group President of Global Fabric and Home and Global Baby and Feminine Care

47.    CAROLYN M. TASTAD, Group President of North America Selling and Market Operations

48.    MARK F BIEGGER, Chief Human Resources Officer,

49.    DEBORAH P. MAJORAS, Chief Legal Officer and Secretary,

50.    MARC S. PRITCHARD, Chief Brand Officer

51.    VALERIE L. SHEPPARD, Senior Vice President, Comptroller and Treasurer,

52.    B. MARC ALLEN, Board of Directors P & G

53.    BRETT BIGGS, Board of Directors P & G

54.    SHEILA BONINI, Board of Directors P & G

55.    ANGELA F. BRALY, Board of Directors P & G

56.    AMY L. CHANG, Board of Directors P & G

57.    JOSEPH JIMENEZ, Board of Directors P & G

58.    CHRISTOPHER KEMPCZINSKI, Board of Directors P & G

59.    DEBRA L. LEE, Board of Directors P & G

60.    TERRY J. LUNDGREN, Board of Directors P & G

61.    CHRISTINE M. McCARTHY, Board of Directors P & G

62.    ASHLEY McEVOY, Board of Directors P & G

63.    ROBERT J. PORTMAN, Board of Directors P & G

64.    RAJESH SUBRAMANIAM, Board of Directors P & G

65.    PATRICIA A. WOERTZ, Board of Directors P & G

66.    JACOB VOGT, jacob.vogt@saatchiny.com, Producer Saaychi & Saatchi NY,

67.    DARYL ANDERSON, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, UNION

68.    HELAYNE ANTLER, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, PRODUCER

69.    AMY AQUINO, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, UNION

70.    J. KEITH GORHAM, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, PRODUCER

71.    JIM BRACCHITTA, Labor Trustee for SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, UNION

72.    JAMES HARRINGTON, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, PRODUCER

73.    ROBERT W. JOHNSON, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, PRODUCER

74.    JOHN CARTER BROWN, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, UNION

75.    DUNCAN CRABTREE-IRELAND, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, UNION

76.    SHELDON KASDAN, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, PRODUCER

77.    BARRY GORDON, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, UNION

78.    ALLAN LINDERMAN, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, PRODUCER

79.    DAVID HARTLEY-MARGOLIN, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, UNION

80.    CAROL A. LOMBARDINI, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, PRODUCER

81.    MICHELLE HURD, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, UNION

82.     STACY K. MARCUS, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, PRODUCER

83.     LYNNE LAMBERT, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, UNION

84.     DIANE P. MIROWSKI, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, PRODUCER

85.     JODI LONG, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, UNION

86.     STEPHANIE MOTHERSHED, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, PRODUCER

87.     RICHARD MASUR, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, UNION

88.     PAUL MURATORE, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, PRODUCER

89.     JOHN T. McGUIRE, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, UNION

90.     MARC SANDMAN, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, PRODUCER

91.     ARIANNA OZZANTO, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, UNION

92.     TED SINCLAIRE, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, PRODUCER

93.     MICHAEL PNIEWSKI, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, UNION

94.     KIM STEVENS, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, PRODUCERS

95.     LINDA POWELL, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, UNION

96.     LARA UNGER, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, PRODUCER

97.     RAY RODRIQUEZ, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, UNION

98.     DAVID WEISSMAN, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, PRODUCER

99.     SALLY STEVENS, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, UNION

100.    RUSSELL WETANSON, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, UNION

101.    NED VAUGHN, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, UNION

102.    TRACEE WILKINS, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, UNION

103.    COLLEEN WILLIAMS, SAG-AFTRA HEALTH PLAN BOARD OF TRUSTEES, UNION

104.    GABRIELLE CARTIS, Former SAG-AFTRA PRESIDENT

105.    FRAN DRESCHER, PRESIDENT of SAG-AFTRA

106.    LINDA POWELL, Executive Vice President of SAG-AFTRA

107.    JOELY FISHER, Secretary-Treasurer of SAG-AFTRA

108.    EZRA KNIGHT, Vice President of SAG-AFTRA NEW YORK

109.    MICHELE PROUDE, Vice President of Mid Size Locals of SAG-AFTRA

110.    SUZANNE BURKHEAD, Vice President of Small Locals of SAG-AFTRA

111.    SHARI BELAFONTE, Vice President of Broadcasters

112.    DIANA BOYLSTON, Board Member

113.    BOB BUTLER, Vice President Broadcasters, executive member of of SAG-AFTRA

114.    SEAN ASTIN,

115.    JANE AUSTIN,

116.    MYKLE McCOSLIN,

117.    SHERYL LEE RALPH,

118.    MATHIS DUNN,

119.    HEIDI YOUNG, heidi.young@us-resources.com

120.    MICHAEL VIERA,

121.    REBECCA DAMON

122.    MICHELLE A. ROBINSON, President Austin-Houston Market of SAG-AFTRA

123.    TOM SCHWARZ, Executive Director of Austin-Houston Markets of SAG-AFTRA

124.     PAMELA GREENWALT,

125.     MARISA LEAL, Director of Entertainment Contract of SAG-AFTRA

126.     TONY FILSON, Officer in Charge of Search Filcro- Media Staffing Group, 212-599-0909, 30 Rockefeller Plaza, New York, New York 10112

127.     TINO GAGLIARDI, Co-Chair Board of AFM &SAG-AFTRA, Intellectual Property Rights DistributionFund

128.     DAVE POMEROY, Trustee Board of AFM &SAG-AFTRA, Intellectual Property Rights DistributionFund

129.     DAN NAVARRO, Trustee Board of AFM &SAG-AFTRA, Intellectual Property Rights DistributionFund

130.     PAT COIL, Trustee Board of AFM &SAG-AFTRA, Intellectual Property Rights Distribution Fund

131.     JANICE PENDARVIS, Trustee Board of AFM &SAG-AFTRA, Intellectual Property Rights Distribution Fund

132.     SIDNEY TAUB, CHIEF EXECUTIVE OFFICER Board of AFM &SAG-AFTRA, Intellectual Property Rights Distribution Fund

133.     LEI BOWEN, Chief Executive Officer of Board of AFM &SAG-AFTRA, Intellectual Property Rights Distribution Fund

134.     ERIC COWDEN, Audiovisual Repertoire

135.     COLIN GILBERT, Associate Director, Artist Relations Board of AFM &SAG-AFTRA, Intellectual Property Rights Distribution Fund

136.     JULIE SANDELL, Associate Director, Repertoire Board of AFM &SAG-AFTRA, Intellectual Property Rights Distribution Fund

137.     CYNTHIA SANCHEZ, Associate Director International for Board of AFM &SAG-AFTRA, Intellectual Property Rights Distribution Fund

138.     MARILYN SWICK, SAG-AFTRA Committee Director

139.     CHRISTOPHER ROGERS, 713-501-6925, rogersfilm@me.com.

140.     MICHAEL MOBLEY, 317-850-8939, mmobley79@gmail.com.

¶     Because of the extent of the volume of defendants whom took part in the charges alleged here within, and because of the Privacy Act of 1974 that conceals information from PLAINTIFF, proper process of service will not be possible without the addresses or way to serve each individual defendant.

PLAINTIFF requests that each EMPLOYER DEFENDANT properly notify each individual defendant WHOM IS or was employed or contracted to EMPLOYER DEFENDANTS, or alternative means of notification be provided by these courts to PLAINTIFF, to be in compliance with both service of due process and the Privacy Act of 1974.

## JURISDICTIONS AND VENUE

This is a civil action seeking damages exceeding $30,000-75,000 (USD), exclusive of interest, fees, penalties, attorney's fees and costs.

## VENUE:

¶       VENUE SHALL BE in this, Eastern District Court of Texas, because the parties contractually agreed to execute the creation of the commercial advertisement of this suit, in Travis County, Austin, Texas and is where the events given rise to the claims occurred in Travis County, Austin, Texas;

¶       In addition, the majority of the NAMED DEFENDANTS, live, reside, work, employ, contract, and conduct regular business in Travis, County, Austin, Texas and surrounding counties of The State of Texas.

¶       NAMED DEFENDANTS ARE well versed and experienced in this type of commercial contracting as well as the Union, federal, state, local, statutory, civil, and criminal, codes, laws, rules and regulations, and are on record as to submitting to compliance and jurisdiction under penalty of perjury to these such agencies.

## JURISDICTIONS:

JURISDICTION OF **PLAINTIFF**:

PLAINTIFF WAIVES ALL personal jurisdiction, evoking private jurisdiction in order to, in special appearance, present, correspond, appear, and settle these matters expeditiously on behalf of the NAMED ESTATE OF, "JASMINE RAY" and that of interest and equity being the sole beneficiary, being the sole holder in due course of the beneficial interest of named estate, including all property rights, rights in general, of "JAZZY FOSHO".

¶    PLAINTIFF jurisdiction shall not be bifurcated;

¶    PLAINTIFF shall not be considered absconding debtor, debtor;

PLAINTIFF, *MAJOR SUR JURIS,* allows for the opinion of this Court to hear, adjudicate, administer and bring forth relief to PLAINTIFF and PLAINTIFF Estate, by way of Presented ATTORNEY IN FACT for PLAINTIFF;

¶    WITH THIS COURT exercising and applying diversity of laws and apply the best suited application of such for the purposes of evaluating the damages caused as a result of the adverse actions of the DEFENDANTS;

¶    WHERE AS THIS equitable claim is asserted as an alternative to the other counts and consistent with conditions where an adequate remedy at law is lacking;

¶    AND IN SO bringing forth such relief as is appropriate for each charge being found factual, whether procedural or substantive, whether federal or statutory coding, being applied to do so and exercise the full authority and powers of this Courts to do so.

¶    PLAINTIFF SHALL REMAIN as PRESENTER, AGENT, and/or ATTORNEY IN FACT, for and in care of, PLAINTIFF, "JASMINE RAY", "JAZZY FOSHO" and any variation including any misspelling, alteration or otherwise manipulated by DEFENDANTS in order to access or misuse said identifiable information for unjust profit, benefits, or enrichment, in relation to the disputes and findings of this suit.

¶    PLAINTIFF REMAINS A friend of these Courts, is non-belligerent, is a non-combative, sound of mind who stands before this Court, in honor, with petition for relief.

JURISDICTION OF DEFENDANTS:

¶    ANY jurisdiction required to properly administer relief and equity to Plaintiff, shall be

derived by way of the contracts governing DEFENDANTS with federal and state agencies in which those agencies carry jurisdiction and expressed penalties over DEFENDANTS under penalty of perjury;

¶       AND WHERE AS this court has the full authority and powers to maximize the full extent of the interpretation and penalties of law, in order to adjudicate this suit of complaint and grant relief to PLAINTIFF;

¶       even if through the exercise of multi-claim, multi-district, or multi-defendants, considering all appropriate statutory, civil, and criminal offenses, wherein use of multi-diverse laws, codes, statutes, rules and regulations that govern the multi-DEFENDANTS, whether in business entity, individual or citizen, or private entity capacity having participated in the events and facts being found of adverse actions in this suit.

¶       WHERE AS ALL DEFENDANTS named here within are in current status of U.S. citizen, business or entity;

¶       WHERE AS ALL DEFENDANTS willingly submit to the laws that govern U.S. Citizens, U.S. Taxing Authority, The Internal Revenue Service (I.R.S.), Universal Commercial Code, (U.C.C), Security Exchange Commission, (S.E.C.), Federal Trade Commission, (F.T.C.), United States Secretary of Treasury (SEC. of TRES.), United States Attorney General, Texas Labor Department, Texas Worker's Compensation Commission, and other such government agencies.

¶       WHERE AS ALL DEFENDANTS do regularly conduct business dealings of the same nature of this suit;

¶       WHERE AS ALL DEFENDANTS engage in contracting with such federal and state agencies governing regulations such as filing reporting or returns to Security Exchange Commission, The Universal Commercial Code Committee, the Internal Revenue Service, The Federal Reserve, The Federal Trade Commission, The Secretary of Treasury, The Secretary of State, and other such government controlled and operated agencies.

¶       WHERE AS ALL DEFENDANTS had explicit knowledge of the intentions and on-goings to occur, and proceeded to engage, willingly and knowing participating in the organization of

cohort-ed efforts to deceive, defraud, harm, discriminate, and retaliate against PLAINTIFF, where in also refusing to stop, prevent, render aide or correct such adverse and harmful actions.

¶      WHERE AS DEFENDANTS therefore, being under current jurisdiction(s) and contracting of those aforementioned agencies shall such be under the jurisdiction for hearing, findings, adjudication and relief of all claims brought forth in this suit to be held in this Court, where as this Court has the powers to exercise authority in applying the proper procedural and or substantive application to determine the merits of the facts of this suit and bring forth a proportionate and equal penalty to DEFENDANTS and order fair equitable relief and damages to PLAINTIFF.

## JURISDICTION OF THESE COURTS:

¶      PLAINTIFF DOES NOT contest nor argue the subject-matter jurisdiction of this suit, given this Court has the power and authority to hear this claim brought to this Court, and also may exercise the powers to temporarily hold territorial and restricted personal jurisdiction over PLAINTIFF only in order to render relief to PLAINTIFF, adjudicate claims brought forth, and administer penalties to DEFENDANTS where applicable. No other application of jurisdiction shall extend over PLAINTIFF or PLAINTIFF ATTORNEY IN FACT.

¶      PLAINTIFF DOES SO GRANT the invocation of diverse, multi, procedural, and substantive and common law, were applicable, so as for these Courts may bring forth relief for PLAINTIFF of those claims brought forth in this suit, and do so trust this Court will apply each appropriate law to each allegation or charge, found in truth, without delay or prejudice to PLAINTIFF or to any part or portion of any claim or allegation here within.

¶      PLAINTIFF DOES GRANT the invocation of The Erie Doctrine of 1938 U.S. Supreme Court, *Erie Railroad Co. v. Tompkins* (1938), The Rules Decision Act of 1789 codified in **28 U.S.C. § 1652**, WHEREIN it states, "The laws of the several states' apply.."

> "...The U.S. Supreme Court in *Erie Co. v. Tompkins,* is an opinion by Justice Brandeis, departed from *Swift* and held that the language in the Rules Decision Act stating that federal courts shall apply the "laws of the several states" includes

state common law." - Cornell Law School

¶ "Proper law may be truly declared in the languages of Cicero, adopted by Lord Mansfield in *Luke v. Lyde,* to be in a great measure not the law of a single country only, but of the commercial world.

¶ WHERE AS THIS Court has the right to assume and exercise its powers of territorial, personal, financial, and subject matter jurisdictions over the DEFENDANTS,

¶ WHERE AS IN events and facts brought forth on the grounds be it statutory, civil, criminal codes and laws, that govern the DEFENDANTS,

¶ WHERE IT MAY be a business entity or individual capacity of public citizens, agents, or servants, are set under this Court and be it administered in this Court and such provisions should be applied to all DEFENDANTS as it stands. This shall apply and extend over all DEFENDANTS as found in **28 U.S.C § 1331**

¶ WHERE AS IT IS here in this Courts in which, it would not be convenient for any other Court to first hear the case, and exercise the power to adjudicate this Claim for relief of PLAINTIFF and which this Court may properly exercise its power over all of the NAMED DEFENDANTS brought forth in this suit.

¶ WHERE IN REQUEST for amending of the process of service upon DEFENDANTS where as if a named DEFENDANT is incapacitated or deceased, the claims and judgment be brought against the Estate of named DEFENDANT;

¶ WHERE IN AS respect to due process request the summons and process of service be served upon the incapacitated or deceased's Executor or Trustee of Estate, Power of Attorney, Attorney, of other such registered agent authorized to settle the matters of this suit;

¶ WHERE AS IS found to not be able to notify named DEFENDANT because of incapacitation or death, and no such Executor or authorized person can be found, served, and or otherwise unable appear for these matters, ask the default judgment be administered and authority to recover such portion of judgement place lein or probate claim upon the estate of such named DEFENDANT.

¶ ALL CONDITIONS PRECEDENT to the maintenance of this action have occurred, have been performed, or have been waived. As it stands with overwhelming evident support implicate

DEFENDANTS acted in bad faith and business dealings, willfully and intentionally breached contracts with PLAINTIFF, took adverse actions in regards to PLAINTIFF, exercised full willingness in the gross negligence,

racketeering, adverse actions, and bad dealings that lead to bodily harm, physical, professional, personal, financial harm and injury of PLAINTIFF, and acted as an organization by way of multiple business entities in order to defraud, deprive, and discriminate against the PLAINTIFF.

¶       WHERE AS THIS Court shall have jurisdiction to hear the facts of this suit,

¶       PLAINTIFF seeks full maximum penalties against the whole of DEFENDANTS, granted injunctions, punitive damages, enforcement of such awards, equity, relief, damages, remedy, reasonable attorney fees and costs, court fees, service of process fees, and costs and any other expenses arising from the negligence to mediate, cure, resolve, and settle in full all debts owed to PLAINTIFF.

¶       WHERE AS PLAINTIFF requests all monies owed and awarded in judgment be paid in full, respective of each by the whole of DEFENDANTS, upon demand in lawful monies and accessible to PLAINTIFF, including but limited to past earned wages, any withheld wages, income, compensations, residuals, compensation, usage and licensing fees, stunt services, principle services, benefits, provisions, entitlements, interests, equity, derivatives, dividends, securities, agency fees, late fees, administration fees, retirement, pensions, health care benefits and coverage, and any monies collected and due to PLAINTIFF by way of insurance policies, stocks, debt or credit securities, market shares, titles, or bonds, and set forth a settling all matters in full, discharging any disputes fairly and efficiently including all issues of contention brought forth herein.

¶       WHERE AS PLAINTIFF, whom if must proceed in due process of public litigation seeks and request a JURY TRIAL.

### COMPLAINT

¶       We, The PLAINTIFF, Ray; Jasmine, Beneficiary, in special appearance, in care of "Jasmine Ray", "JASMINE RAY", in care of (JAZZY FOSHO) sue against the DEFENDANTS, SCREEN

ACTORS GUILD (SAG-AFTRA "THE UNION"), PROCTOR AND GAMBLE p/a/k/a P&G, SAATCHI &

SAATCHI NY, BE REEL, INC, LLC, EXTREME REACH AND TALENT PARTNERS PAYROLL SERVICES,

SCREEN ACTORS GUILD NATIONAL EXECUTIVE BOARD AND BOARD OF TRUSTEES, PUBLICIS

GROUPE, GALLAGHER-BASSET LAW FIRM, SCREEN-ACTORS GUILD HEALTH AND PENSION

PLAN BOARD, NAMED INDIVIDUALS ACTING IN INDIVIDUAL CAPACITIES;

¶       Individuals hired or employed by other defendants to act in full or part, knowingly to

operate the breaches of contracts, utilized, aided, created, and participated in operating and organizing in

conjunction together to create and execute various violations, unsafe workplace conditions, disparity, adverse

actions, retaliations, and abuses against PLAINTIFF, allege:

## ALLEGATIONS:

¶       WHEREAS DEFENDANTS WILLFULLY and intentionally contrived together,

organized together, and acted in unison as to discriminate, humiliate, sexually humiliate and harass,

retaliate, deprive, and financially defraud harm PLAINTIFF.

¶       DEFENDANTS exercised concerted and organized efforts in aim to commit

transnational fraud against the Estate and express trusts of the respective estate of the listed PLAINTIFF, while

knowingly and willfully violating PLAINTIFF with continuous retaliations including unauthorized commercial

usages extending eight calendar years, misappropriation of publicity and image infringement, unjust enrichment

among the aforementioned violations of state, federal, medical and labor laws.

## APPLICABLE CODES :

I.       ON approximately October 23, 2023, VIOLATION OF TITLE VII OF THE EQUAL EMPLOYMENT

OPPORTUNITY COMMISSION, (EEOC); recorded and iissued a charge of discrimination based on the following: race,

gender, genetic information, sex, and disability;, **42 U.S.C. 2000-e-5(b), 29 U.S.C.211, 29 U.S.C. 626, 42 U.S.C. 12117, 42**

**U.S.C. 2000FF-6**; Federal Investigator, CARINE MARIE-JEAN, whom conducted the interview and application of

unperfected charge determined that, although an untimely reporting, the elements and requirements to claim to employment

discrimination was met, and the right to sue was issued to reporting party, PLAINTIFF in this suit; charge number: 451-2023-04132;

II.      BY VIRTUE OF fact based on the factual findings of the EEOC investigation, a VIOLATION OF TEXAS LABOR CODE TEX. LAB. CODE § 21.051, wherein it states,

> ¶"that an employer, employment agency, or labor organization commits an unlawful act if it discriminates against an individual due to a disability or segregates or classifies them in a manner that would deprive them of an opportunity or otherwise adversely affect their status as an employee." **TEXAS LABOR CODE § 21.051-21.061**

III.     VIOLATION UNDER THE TEXAS PAYMENT of WAGES ACT, **Chapter 61, sub. B sec. 61.011, sec 61.012-61.015 ACTS 1993**, FAIR LABOR STANDARDS ACT OF 1938 (**29 U.S.C. Sec. 201 et. Seq.**) **Acts 1993 73rd Leg., ch. 269, Sec. 1 eff. Sept. 1, 1993, Sec. 61.016, Acts 1993, 73rd Leg., ch. 269, Sec. 1 eff. Sept. 1, 1993, Sec. 61.017, Acts 1993, Amended by: Acts 2003, 78thth Leg., Ch. 316, Sec. 1, eff. June 18th, 2003, Amended by: Acts 2019, 86th Leg., R.S.. Ch. 284(H.B. 2240), eff. Sept 1, 2019, See 61.018, Acts 1993 73rd Leg., ch. 269, Sec. 1 eff. Sept. 1, 1993** note also **See 61.019 Acts 1993 73rd Leg., ch. 269, Sec. 1 eff. Sept. 1, 1993. Amended by Act 1997, 75th Leg., ch. 1158, Sec 1, eff. Sept. 1, 1997 Tex. Lab. Code § 61.015(a); Tex. Lab. Code § 2802;**

IV.     VIOLATION OF TEXAS LABOR CODE **§ 21.08 §42.01,Ch. 21, Sub. A, Sec. 21.001,  Acts 1993 73rd Leg., ch. 269, Sec. 1 eff. Sept. 1, 1993. Amended by Acts 1995, 74th Leg., ch. 76, Sec 9.01(a), eff. Sept. 1, 1995. Sec. 21.128 Added by Acts 1995, 74th Leg., Ch. 76, Sec. 9.05(a), eff. 1995. Amended by Acts 2009, 81st Leg., R.S. Ch. 337 (H.B. 978), Sec. 5 eef. Sept. 1, 2009. Ch. 21, Sub. C-1, Sec. 21.141, added by Acts 2021, 87th Leg., R.S., Ch. 172 (S.B. 45), Sec. 1, eff. Sept. 1, 2021. Sec. 21.142, Added by Acts 2021, 87th Leg., R.S., Ch. 172 (S.B. 45), Sec. 1, eff. Sept. 1, 2021.  Title 9 Ch.42, Sec. 42.01 Acts 1973, 63rd Leg., p. 883, ch. 399, Sec. 1 eff. Jan. 1, 1974 Amended by Acts 1977, 65th Leg., p. 181, ch. 89, Sec. 1, 2, eff. Aug. 29th 1977; Acts 1983, 68th Leg., p. 4641, ch. 800, Sec. 1 eff. Sept 1, 1983; Acts 1991, 72nd Leg., ch. 145, Sec. 2, eff. Aug. 26th, 1991; Acts 1993, 73rd Leg., ch. 900, Sec. 1.01 eff. Sept. 1, 1994;Acts 1995, 74th Leg., ch. 318, Sec. 14, eff. Sept, 1, 1995; Acts 2001, 77th Leg., ch. 54, Sec. 4, eff. Spt. 1, 2001; Acts 2003, 78th Leg., ch. 389, Sec. 1 eff. Sept. 1, 2003. Amended by: Acts 2011, 82nd Leg., R. S. Ch. 691 (H.B. 359), Sec. 6, eff. Sept. 1, 2011; Acts 2013, 83rd Leg., Ch. 953 (H.B. 1791), Sec. 6, eff. Sept. 1, 2013; Acts 2013, 83rd Leg., R.S., Ch. 1407, (S.B. 393), Sec. 19, eff. Sept. 1, 2013; Acts 2013, 83rd Leg., R.S., Ch. 1409, (S.B. 1114), Sec. 9, eff. Sept. 1, 2013; Acts 2023, 88th Leg., R.S., Ch. 188(H.B. 3065), Sec. 3, eff. Sept. 1, 2023.**

V.      VIOLATION OF AMERICANS with DISABILITIES ACT of 1964 AND 1991, SEC. 504 REHABILITATION

ACT of 1973, And 1990, including amendments of 2008, later reformatted into **U.S.C. 42, Ch. 126, Sec. 12101, Sec. 12112, Sub. Ch. II, Sec. 12131, Sec. 12132**

VI.    VIOLATION OF  Iinjured employee Texas Workers Compensation TEXAS LABOR CODE **TITLE 5 SUB. A. CH. 408, SUB CH. A, Sec. 408.001, Sec. 408.003, Sec. 408.004, Sec. 408. 0045, Sec. 408.005, Sec. 408.006, Acts 1993, 73rd Leg., Ch. 269, Sec. 1, eff. Sept. 1,, 1993. Amended by: Acts 2017, 85th Leg., R.S. Ch. 353 (H.B. 1983), Sec. 2, eff. Sept. 1, 2017.**

VII.    VIOLATION OF EMPLOYEE RETIREMENT INCOME SECURITY (E.R.I.S.A.)  **29 U.S.C. 1001 et. Seq. Eef. Sept 4, 1974, U.S.C 29 Ch. 18, Sub. I §§ 1001-1193c; Sub. II, §§ 1201-1242; Sub. III, §§ 1301-1461.**

¶    **(b)  "It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to federal courts." - United States Code 29 U.S.C. § 1001(b); Texas Administrative Code, Title 28, Part 2, Ch. 65, 65.01, § 65.10 adopted to be eff. Nov. 10, 1977, 2, TexReg., 4324; amended eff. Sept. 25, 1979, 4 TexReg 4324; ammended eff., Sept 18, 1981, 6 TexReg 3274; amended eff. Oct. 26, 1981, 6 TexReg 3819; amended eff. Nov.11, 1983, 8 TexReg 4499; amended eff. Oct. 1, 1985 10 TexReg 3506; amended eff.  Oct. 17, 1989, 14 TexReg 5260.**

¶    (f) "The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action."

VIII.    VIOLATION OF TEXAS MEDICAL RECORDS PRIVACY ACT (TMRPA) and HEALTH INSURANCE PORTABILITY and ACCOUNTABILITY ACT (HIPPA) **Acts 2015, 84th Leg. R.S. Ch. 1 Sec. 3.1639(55), eff. April 2, 2015; U.S.C. 20 § 1232G, 34 CFR Pt. 99; 42 U.S.C. 42 § 1320d-6; Title II ADA; Title VII CRA Acts 1964; 45 CFR 164.512(E)(1)(ii)(B); 45 CFR 164.512(j)(1)(i); 45 CFR 164.512(j); 45 CFR 164.512(J)(4). Insurance code, Title 8 Sub. D, Ch. 1301, sub A, 1301.001;TCA, Title 22 pt. 9, Ch. 165, 165.2; MPA § 159.005; HIPPA 45 CFR Parts 160-164**

VIIII.    VIOLATION OF TEXAS BUSINESS and COMMERCIAL CODE, **BUS&COM § 521.051 TITLE 11 Sub. B, 521.001-521.1.53; 15 U.S.C. Sec. 1681 ET Seq.;**

X.    VIOLATION OF COPYRIGHT, TRADEMARK, IMAGE, LIKELINESS, MISAPPROPRIATION, UNAUTHORIZED USAGE AND DISTRIBUTIONS, RIGHTS OF PUBLICITY, **17 U.S.C. § 506(a) and 18 U.S.C. §**

2319; 18 U.S.C. § 2319 (a)(b)(3), 3571(b)(5); Restatement (Second) of Torts, § 652 C1997; Tex Ann § 26  26.002-

26.013, Vernon 1987; Texas Penal Code (Ch. 43) 21.15, 21.16(b)(1)(c); Sec 20A.02(a)(3,), (4)(7)(8), 21.02, 21.08, 21.11,

21.12, 21.15, 21.16, 21.17, 21.18, 22.011, 22.021, *MOORE V. BIG PICTURE CO.,* 828 f.2D 270, 275(5TH Cir. 1995)

VIOLATION OF TRADEMARKS UNDER **SEC. 43 of the LANHAM ACT 15 U.S.C. 1125(A);**

MISAPPROPRIATION, UNJUST ENRICHMENT, **CIV PRAC & REM § 134A.004, CFR Title 37 § 37.201.22; U.S.C.**

**Sec. 411 Tit. 17, 702; TDTP  TITLE 5. Sub. A. C., Ch 541, Title 2 Ch.17.46;**

XI.    VIOLATIONS OF THE TEXAS WHISTLE BLOWER ACT **554.001-554.010; 18 U.S.C. § 1514A, Sec. 1341,**

**1343, 1344, 1348.S.C. §4712,** *if applicable.*

XII.    VIOLATION OF TEXAS LABOR CODE § 52.031 BLACKLISTING, RETALIATIONS,  BREACH OF

CONTRACTS, **Tex. Lab. Code § 52.031(a)(b)(1)(2)(c)(1)(2)(3) Acts 1993, 73rd Leg., Ch. 269, Sec 1, eff. Sept. 1, 1993;**

**Tex. Lab. Code § 21.055, Acts 1993, 73rd Leg., Ch. 269, Sec. 1, eff. Sept. 1, 1993; 42 U.S.C. § 12203(a)(b)(c); 10 U.S.C.**

**§ 932-aRT. 132(a)(1)(2)(b)(1)(a)(b)(i)(ii)(3)(4);**

XIII.    VIOLATION OF DEFAMATION,  **28 U.S.C. § 4101;Tex. Lab. Code § 301.074, Acts 1993,Acts 1993, 73rd Leg.,**

**Ch. 269, Sec 1, ee. Sept. 1, 1993; Renumbered from Labor Code Sec. 202.074 and amended by Acts 1995, & 4th**

**Leg., Ch. 655, Sec. 11.02(b), eff. Sept. 1, 1995.**

XIV.    VIOLATIONS OF TITLE IX: RACKETEERING INFLUENCED and CORRUPT ORGANIZATIONS, (R.I.C.O.),

**18 U.S.C. § § 1961-1968, 9-110.330, 9-105.000, 9-105.7501956(a)(1)(A)(ii)**

XV.    GRAND LARCENY, THEFT, FRAUD TEXAS PENAL CODE § **TITLE 7, Ch. 31, 31.17(a)(b), 31.03, 31.04,**

**Added by Acts 2011, 82nd Leg., R.S., Ch. 260, Sec. 1, eff. Sept. 1, 2011; Title 7, Ch. 32, 32.01, 32.21, 32.22, 32.23, 32.24,**

**32.32,32.33, 32.41, 32.42,32.46, 32.47, 32.49, 32.51, 32.53, Acts 2023, 88th Leg. R.S., Ch. 1076 (S.B. 576), Sec. 3, eff.**

**Sept 1, 2023.**

XVI.    VIOLATION OF SECURITY EXCHANGE COMMISSION **SEC. 50-151.4**; TEXAS SECURITIES ACT, **Title 1,**

**Title 2, Title 5, Title 7, Title 11, TITLE 12, Ch. 4008, Sec. 4008.001-4008.105; Title 15, 581-29**

XVII.    VIOLATION OF Texas Labor Code, **Tex. Lab Code 201.012, 201.001, 21.010, 227.3, 21.259,**  26 U.S.C. § 7206

FRAUD

XVIII.    VIOLATION OF SAFE WORKPLACE, PROVISIONS, NEGLIGENCE, **Tex. Lab. Code § 411.103, Tex. Lab. Code § 408.001(a)(b)(C)(d); OSHA ; Tex. Lab. Code § 21.2585(a)(1)(2)(b)(d)(4)**

### EVENTS IN FACT:

Plaintiffs reallege and incorporate all allegations in paragraphs above, as if set forth herein.

¶    This claim arises between the PLAINTIFF and various DEFENDANTS, arises from the booking request for On camera Principle Union Performers for a Union signatory Int./National commercial in Austin, Texas on December 8, 2015, from two separate official casting notices, both being from parties being DEFENDANTS, "AT'MOSPHERE CASTING", AND SAG-AFTRA, to book as a Principle Performer for a Proctor and Gamble, Tide Laundry Detergent Commercial, as "Military Person", without auditioning, booked remotely through email communications.

A. On the original casting:

" "**Seeking principal performers able to portray:**
**shooting Friday 12/11/15**
**Football players: African American and Caucasian. Lean and Big guys. 20-30's Must look like an NFL players and be physically able to play."**
Military types: Men and women 20-25 years old; All ethnicities."

¶    On December 9, 2015, Casting company representative confirmed JAZZY FOSHO being booked for this commercial by DEFENDANTS, "ATMOSPHERE CASTING", representative DEFENDANT Kathryn Moore, along with DEFENDANTS P&G and DEFENDANT SAATCHI & SAATCHI NY.

¶    PLAINTIFF was assigned role of "Military Member #6". Background performers are not assigned role names in any capacity, as per SAG-AFTRA Signatory Commercial Contract stipulations. Email communication from DEFENDANT Kathryn Moore, shows her confirming that Defendants "SAG-AFTRA" and "SAATCHI & SAATCHI NY" had indeed listed the Military and Football roles, as "PRINCIPLE STUNT PERFORMERS".

¶    DEFENDANTS have suppressed, concealed, denied to furnish the evidence of the original intent hire of capacity of role, as expressed in pre-production documentation, like i.e. "storyboards, illustrations, planned principle photography styles/ing". The clarification of role was questioned by PLAINTIFF and evidenced from the casting company and "SAG-AFTRA" in its own casting notice of this commercial via emails, states such, having

listed this role as a "Principle", with no mention of stunt services requests or requirements.

¶      "Background Performer", "Principle Performer", and "Stunt Performer" definitions are specified role classifications, with different pay, wage, credit, residual, negotiation, and provisional tiers as defined in the SAG-AFTRA "BACKGROUND ACTORS THEATRICAL AND TELEVISION AND COMMERCIAL CONTRACTS DIGEST", "COMMERCIAL and THEATRICAL CONTRACTS", "WAGES and WORKING CONDITIONS AGREEMENTS", "STUNT AND SAFETY DIGEST", see also 2015 Collective Bargaining Commercial and Stunt Contracts.

¶      Stunt roles and credits are accounted separately than on camera principal acting roles; By denying stunt credit as a principal hire not only produces a damage to professional reputation, proves additional financial hardship, but also as to prove accreditation to gain future lawful employment in other stunt actor capacities on signatory sets. Such adverse actions lowered the positive impact of the trajectory of the performer and potential future earnings.

¶      PLAINTIFF was baited with the Principle role email booking request to travel overnight from a neighboring state, under the guise to accept a principle booking, when in reality it was projected to deprive PLAINTIFF of true role classification and entitled benefits and provisions of such, by placing PLAINTIFF in a lower classification than agreed upon to contract for services.

¶      As is the structure of hiring capacity as set forth by DEFENDANTS, "SAG-AFTRA",  Background actors are not given role names, no exceptions, nor are background performers allowed to be purposefully utilized in principle or stunt capacity, without (1.) prior notification, consent and right of refusal of performer (2.) The right to negotiate the higher services (3.) providing safety props, mats, padding and safety gear, stunt coordinator, stunt and dress rehearsal(s)  (4.) a medic present in case of injury; (5.) correct classification with stunt accreditation (6.) on set amenities like a proper dressing room for privacy and dignity (7.) entitled residuals pay for performance, usage and licensing rights.

¶      The rate for "background performer" was not incentive for PLAINTIFF to desire to participate on the Tide commercial, with meaning having to drive to another state, with the urgency of shoot dates and time of notification for booking the job, having other available work locally, with personnel requesting for TIDE production

of knowing PLAINTIFF would not accept a background position.

¶      PLAINTIFF immediately informed casting company that she was shooting another commercial in New Orleans, Louisiana, as an on Union On Camera Principle, and would have to travel into Austin, Texas, from New Orleans, Louisiana, overnight, to fulfill the immediate booking request. Travel costs were paid by performer and never reimbursed, as is stipulated by SAG-AFTRA Commercial Contracts upon notification prior to accepting the role, and being booked with confirmation from client, production, and casting offices.

¶      DEFENDANT "ATMOSPHERE CASTING", DEFENDANT KATHRYN MOORE, sent email communication to all performers booked in the military group, noting that no performer was booked through their agency, put suggested that listing an agency, if given an upgrade on set, it would be easier to obtain the upgrade, rates, and residuals from the ad agency. No agency representation is required to book Principle roles on signatory projects.

¶      The military member group was directed to perform all actions and stunts, identical to the "Lead", and not directed in background performer capacity, the entirety of the on set shooting day. Said "Lead" who was unable to perform the stunts, specifically, "Lead Principle Performer", Jennifer Arrendes, was unable to perform the stunt(s) of diving under the barb wire into the mud pit, and then recovering in two-three seconds, launch up from ground position, run at full speed off camera, the particular portion of stunt scene shown in the final exhibition of advertisement.

¶      Military Group Performers were not provided with sufficient information on how to safely complete each of the different stunts, preventing incorrect form or any other such information that could have prevented injury.

¶      No incidents were reported in writing as required by signatory protocols and as requested by PLAINTIFF and other performers.

¶      "Lead Principle" received said such compensation equal to role classification of Principle, including residuals, yet she was not shown in the final exhibition of advertisement.

¶      PLAINTIFF did not receive equal or fair compensation in comparison to non-colored counterpart.

¶      Aforementioned "Lead Principle", is a non-Hispanic Caucasian woman.

¶      PLAINTIFF, is a woman of color, a protected class. who did not receive equal or fair treatment or compensation in comparison to non-colored counterpart.

¶        BOTH PLAINTIFF and "LEAD", were the only two women hired for the military scene or member group, and performed identical action and direction yet received unequal pay and treatment.

¶        "LEAD" was eventually provided with a safe place to change wardrobe and was able to eat lunch in where she said, "in her car with her husband.", avoiding the "hazing" or humiliation of being hosed down with a water hose and forced to strip out of wardrobe exposing our wet, naked bodies. PLAINTIFF wore nude undergarments that after wet by water hose, became conspicuously see-through, exposing intimate areas of body.

¶        It is re-asserted, in fact, in the final exhibition of advertisement that was distributed, DEFENDANTS Producers decided to use the single shot principle photography and stunt performance, of PLAINTIFF.

¶        The scene is of PLAINTIFF running at full speed, diving full force into a mud pit, under real barbed wire, low crawl to the end of mud pit, under barbed wire, then jump up with veracity and sprint off camera"

¶        The "LEAD" was not shown in the final advertisement exhibition of the same commercial.

¶        This stunt performance was done without the assistance of a stunt coordinator or choreographer, protective gear, safety gear, or proper instructions to safely complete each stunt task requested. After a sequence of repeating stunts for hours without a break or rest period, the military member group repeatedly asked for protective gear and padding, denied requests to be seen by a medic personnel on site, or proper paperwork. All requests were denied to PLAINTIFF and the five men performers.

¶        These negligence(s) are in direct violation of the SAG-AFTRA Membership Contract, Stunt and Safety regulations and contract provisions, for a safe working environment, and a breaching of state and federal duties to uphold a safe work environment of reasonable expectation.

¶        This equitable claim is asserted as an alternative to the other counts and consistent with conditions where an adequate remedy at law is lacking.

¶        AS substantiated through DEFENDANTS internal and third party investigations, it was found that "military types" were the only group to be hosed down with a water hose, in between lunch, and again after the stunt sequence completed for the day.

¶        "Military Group" was the only group required to strip naked, twice on that shoot date, without privacy, changing rooms, access to restrooms or adequate coverings.

¶      The PLAINTIFF body was exposed, with sexual humiliation, by force and coercion by DEFENDANTS.

¶      PLAINTIFF body was harmed by the water hosing.

¶      PLAINTIFF was harmed by the rough application of "mud/dirt" the makeup department staff forcibly smeared on PLAINTIFF face without consent.

¶      Plaintiff was harmed by the use of the "rainmaker" that doused water continuously onto performers during the stunt sequence, providing additional hazard, and also induced cold like symptoms as it was approximately under fifty, (50), degrees in temperature in the later half of the shoot day.

¶      PLAINTIFF body was harmed and injured caused by DEFENDANT negligence of providing safety and protective gear, tools, equipment, and practices.

¶      ALL performers were injured with visible bruising, cuts, muscle tears, contusions, and hematomas. Hospital records describe the extent of damages to PLAINTIFF.

¶      These events occurred on school grounds of, "The Texas School for the Deaf and Special Needs", where the shoot was held. Children, school staff, administration and others were present and watching the "hazing", in addition to other portions of the shoot day.

¶      The incidents of hazing and sexual exploitation were recorded by the film company, Be Reel, INC, in addition to INDIVIDUAL DEFENDANTS, and whoever else, being concealed from PLAINTIFF, had responsibility of capturing film that day, video, digital, and still photography. The footage is exploitative, damaging, and has been shared with internal personnel, staff and contractors, privately and in group chats and social messaging. All images not taken by the "military types" ourselves for proof of incident were taken without consent and without agreement to use share or distribute in any manner, whether private or public.

¶      When PLAINTIFF initially refused, contesting, questioning the validity of request regarding water hose, entering lunch area, stripping out of wardrobe in front of everyone, PLAINTIFF was told she was

"complaining" about the conditions, and should be grateful to even be there. "PLAINTIFF" was told discriminatory remarks such as "don't be a diva", "You're a model, don't you get naked in front of people all the time, anyway?" and "At least we know now she wasn't born with a dick", (insert laughter).

¶     PLAINTIFF and the five male performers, were humiliated and taunted by DEFENDANTS while made to being hosed down with a water hose, forced out of clothing, and made to stand and wait for further instructions before entering the cafeteria.

¶     PLAINTIFF and five male performers were made to wait, unclothed, outside the cafeteria until all other cast and crew broke for lunch and entered. PLAINTIFF and the other Performers were allowed in after everyone else, including the NATIONAL FOOTBALL TEAM, whom had entered, sat, and begin eating before PLAINTIFF and other performers were allowed to enter inside the cafeteria.

¶     PLAINTIFF and five male performers were made to get their food last, not able to enter food line, until every single other person had made their plates first.

¶     Instead of being provided with available means of privacy and dignity during or after lunch, while changing in and out of wardrobe, PLAINTIFF endured discriminatory and degrading commentary from other cast, crew, set workers, clients, and superiors and school attendees in reference to situation, body, age, face, reactions, genetic information, appearance, etc. before, during, and after lunch.

¶     Members of cast, crew, set workers, clients, and superiors recorded the events unfolding on personal phones, and "B-Roll" type shots of us being water hosed and forced to expose our bodies, in an uncomfortable and unsafe manner out of wet wardrobe and left us exposed, and laughed about it.

¶     The bathrooms were locked on purpose, could not enter during lunch time. No other places of restrooms of facility was provided. Plenty of Trailers "honey wagons", with proper amenities, were on site and available, but the "military type performers" were denied access to change or use them for restroom relief.

¶     PLAINTIFF did not have access to personal belongings or clothes during lunch period

¶     Unsafe workplace conditions that was created by safety failures, sexually exploitation, hazing ritual, denial of provisions.

¶     The risk for a sexual assault was created by having an essentially naked woman without

adequate coverings paraded through a cafeteria of aggressive football players hyped up on adrenaline, also directors, clients, ad agency reps, all kinds of "superiors".

¶      The other stunt players were from the National Football League (NFL) Bengals Team, (all men), who were paid an amount well over scale minimums, causing a gender pay discrimination, a class discrimination, and a disparity between performers, for the same amount of time or less performing stunts on camera, with equal agility and roughness required as the military member group, used as stunt players.

¶      All Football players, whether principle or not, was paid, paid higher than the military group, and was afforded the amenities and provisions one expects when hired on a Class A signatory commercial shoot. All to common knowledge, were treated respectfully and preferentially, as compared to PLAINTIFF and other "military group members" performers.

¶      Defendants, B-REEL, INC, LLC,  was comprised of local hire contractors and IATSE union members that are considered crew or production members.

These INDIVIDUALS, are named DEFENDANTS, and are the individuals whom carried out the orders to ignore regular stunt and safety protocols, creating a harmful stunt set, using real barb wire instead of prop wire, denying access to personal clothes/belongings, bathrooms, made disparaging and derogatory commentary throughout the day and evening, used special effects machine (SPX) effects, "rain maker" without notice or pay bump in weather under 50 degrees in temperature, denied the trailer/honey wagon access for privacy and dignity while changing out and into wardrobe, didn't have hair and makeup people except the ladies who came to make our faces "dirtier" and sprayed dirt with water bottle sprays directly in our faces, without notice, refusing robes or coverings in between shooting schedules, hosing us down with water hoses instead of providing a safe space to change wardrobe, forcing us to strip naked two times in front of hundreds of set personnel, contractors, clients, performers, and the people from the school, instructing us to eat without coverings, and encouraged us to push past our increasing body pains and injuries from performing stunts repetitively for hours without a break, not giving upgrade contracts when requested, not providing a certified medic to evaluate the extent of injuries, failures to fill out injury and incident reports, failure to give protective gear as or in

addition to wardrobe, participated in lewd and derogatory commentary when performers were in state of vulnerability/exposed, failure to stop or prevent any of the atrocious, exploitative and unsafe events occurring throughout the day.

¶       These INDIVIDUAL DEFENDANTS chose to follow orders, knowing the consequences and danger this could produce or that would occur, and in a very intentional and purposeful way continued to create an unsafe work environment, including posing dangers that would not reasonably be expected for the role hired in, including humiliation, exploitation, and a maliciously hostile work environment.

¶       No person should go through public humiliation or "hazing" in a workplace. No person should be coerced, threatened to be sent home, (losing a union job) for not wanting to agree to an unlawful action or request by employer(s), nor degraded and sexually exploited in the workplace.
No person shall work without pay, wages, and/or compensation for their services rendered.

¶       The disparaging comments made while in the state of undress caused body phobias to PLAINTIFF that had to be worked out in therapy sessions, which are not and will not be admissible in any portion of this claim. Examples were: "At least we know she wasn't born with a dick", said by a producers walking by into the cafeteria with another executive after seeing me disrobed. Implying that PLAINTIFF may be perceived as "looking or appearing 'transgender, male, no-binary, androgynous, or any other such "not normal for a woman" to appear as is, naturally born female/woman, with a womb and uterus, fitting the lawful definition of female assigned at birth. Personally nor professionally has PLAINTIFF never portrayed persona to be of the LGBTQ+ character, personality, or transvestite community.  Many more disparaging, disrespectful, and hurtful comments were made by several personnel on several ranks, including other actors (football players), crew members and such.

¶       Adequate means to avoid and prevent all unsafe conditions, harm and injury were available and actively denied and refused by DEFENDANTS.

¶       Unbeknownst to Plaintiffs, all benchmarks for On Camera principle, stunt, and residuals had

been achieved, DEFENDANTS failed to notify Performer(s) of such entitlement earned for meeting these benchmarks.

¶       DEFENDANTS failed to obtain consent and usage rights, licensing rights for all versions of said commercial advertisement, including spec spots, inception, original, released versions and altered versions.

¶       DEFENDANTS purposely concealed the distribution residual payments, in addition to the renewal of the distribution cycles for this commercial exhibition for at least 8 calendar years. A total of at least one original airing cycle and at least three renewal cycles; including versions (1) :30 sec advertisement, (2) :15 sec advertisements, wild spots variations, at least two unpermitted altered versions.

¶       DEFENDANTS, SAG-AFTRA, was solely responsible for correcting the true role status and performer classification and include stunt performance services.

¶       DEFENDANT, SAG-AFTRA is responsible for ensuring proper payment of residuals and benefit increments were accurately accounted for, presented to clearing house at SAG-AFTRA to be cleared for distribution, airing and payments.

¶       DEFENDANTS WERE notified within thirty (30) days of all claims, allegations, disputes, and contentions set forth here within.

¶       For eight (8) years DEFENDANTS have knowingly and intentional engaged in unauthorized usages and misappropriation of image and stunt performance, infringing upon PLAINTIFF rights.

¶       DEFENDANTS knowingly and with intent to defraud PLAINTIFF, withheld, diverted, and refused to pay monies owed to PLAINTIFF by way of contractual stipulations as governed by the SAG-AFTRA Signatory Commercials Contract 2015, SAG-AFTRA Membership contracts, handbook, rules, and regulations in relation to the role wage, capacity, performance fees, agency fees, stunt services, residuals, credits, and healthcare benefit thresholds.

¶       DEFENDANTS, SAG-AFTRA, failed to correct role classification of PLAINTIFF,

even after verifying PLAINTIFF as, "ON CAMERA PRINCIPLE STUNT PERFORMER".

¶      DEFENDANTS failed to identify and pay another performer whom is prominent in the same commercial advertisement mentioned herein.

¶      The material facts were concealed from the PLAINTIFF, which in turn, delayed the discovery of full extent of all DEFENDANTS' harmful actions, wrongdoings and deprivation against PLAINTIFF.

¶      Through the claim investigations in both 2015 original claim and dispute and 2023 made by PLAINTIFF to DEFENDANT, "SAG-AFTRA", whom confirmed identity of performer JAZZY FOSHO, to be prominently shown in principle photography, shown alone in the scene, performing a stunt for the commercial advertisement for the unedited version of, "Tide: Loads of Hope", and also confirmed unlawful, unauthorized usages, distributions and misappropriation, through email communication.

¶      While certain Union minimum rates were compensated for (1) one day rate as a background performer, (2) one check for the difference between a background performer and an on camera performer minimum day rate, (3) one "supplemental" minimum stunt day rate, the entitled residuals covering both Principle and Stunt, dating from original cycle continuing throughout all renewal periods/cycles, were never paid out, and the role classification was not corrected in order to avoid automated payments of residual checks that would be sent to PLAINTIFF.

¶      Concisely, residual payments and/or any license, usage fees are due by DEFENDANTS, have have not been paid or made available to PLAINTIFF

¶      Despite the eight (8) years of unauthorized usages and the DEFENDANTS, expressed desire to gain future licensing PLAINTIFF performance.

¶      DEFENDANTS, failed to remedy the substantiated claims of offenses, injuries, and damages sustained by PLAINTIFF.

¶      PLAINTIFF attempted to resolve these disputes repeatedly with DEFENDANTS to deliver the required compensations and residuals, and rights to negotiate usages and rates to which PLAINTIFF is entitled.

¶      DEFENDANTS failed to make corrections or settle disputes when brought to their attention.

¶      DEFENDANTS avoided residual payments, stunt services rendered, performance fees, usage and distribution fees, of monies owed TO PLAINTIFF and other performers.

¶      DEFENDANTS withholding monies owed to PLAINTIFF on a full original cycle of distributions, and actively and continually renewed this advertisement, gaining exponential unjust enrichment and direct profits for use of this advertisement, without express consent or agreement from PLAINTIFF.

¶      DEFENDANTS failed to pay out monies owed on original distribution cycle, failed to confirm renewal cycle paperwork, failed to obtain authorization for usage and licensing, and failed to correct performer status or notify performer of monies/residuals owed.

¶      DEFENDANTS were in complete control of records, monies owed, reports, ledgers, bookkeeping, and other applicable data.

¶      DEFENDANTS held record keeping and applicable data within the sole possession and control of DEFENDANTS.

¶      DEFENDANTS accepted fiduciary role to account for and properly make transfers to PLAINTIFF in accordance with the standing agreements of signatory regulations and signatory commercial contract under circumstances giving rise to the existence of trust among the parties.

¶      DEFENDANTS have acted in bad faith, bad dealings, dishonor, with intention to defraud PLAINTIFF.

¶      DEFENDANTS, GALLAGHER-BASSET, LLP, used unwarranted, unlawful, and invasive tactics to gain information from PLAINTIFF during the claim process.

¶      DEFENDANTS, GALLAGHER-BASSET, LLP, Representatives impersonated and misrepresented to PLAINTIFF to be representatives of the Texas Workers Compensation Commission, and other enforcement authority, during claim Texas Unemployment claim process.

¶      DEFENDANTS conspired together to hire risk management and surveillance teams to stalk, harass, record, and tamper with the property and possessions of PLAINTIFF during original or

"initial" claim period.

¶    DEFENDANTS used doctors, chiropractors, and medical appointments as a way to violate and abuse the privies and liberties of PLAINTIFF, to the point PLAINTIFF was so uncomfortable PLAINTIFF had to rescind and revoke all prior medical consents and authorizations given to settle the matters of the injuries that occurred in the workplace.

¶    DEFENDANTS of GALLAGHER-BASSETT, LLP and DEFENDANT, DR. SEAN GALLAGHER misused their privilege of access to medical and other sensitive patient information, relation and nepotism within corporate entities to engage in unlawful sharing of personal, medical, education, and income information of PLAINTIFF.

¶    DEFENDANTS impeded supplemental work when PLAINTIFF was should have been able to regain part time employment.

¶    DEFENDANTS mishandled and shared medical information to unauthorized persons, entities, and third parties.

¶    DEFENDANT, Amanda Barlow of Gallagher Bassett, LLP pretended to be a representative of the Texas work Force Commission to gain personal knowledge about PLAINTIFF, and then it was found out she is employed for the lawyers of the DEFENDANTS, whom ultimately was delegated the power to deny my claim without appeal.

¶    DEFENDANTS used federal and governmental resources to unduly and unwarranted impede PLAINTIFF civil rights, right to quiet enjoyment, taking extreme measures to the extent of breaking into residences, tampering with PLAINTIFF vehicle to cause harm or accident, infiltration of work associates, family, friends, past known associates.

¶    PLAINTIFF was sent through a string of frivolous and made up appointments that were not kept by physicians, under the guise Texas workers Compensation claim requirements.

¶    DEFENDANTS discriminatory denied PLAINTIFF compensatory relief, concealed denial from

PLAINTIFF but still required PLAINTIFF reporting, doctors visits, and examinations, when unemployment compensation had already been denied but failed to notify PLAINTIFF of such adverse decision, until it become obvious and PLAINTIFF repeatedly asked directly repeatedly, until it was disclosed time period restricted from work would not be compensated.

¶       PLAINTIFF held insurance policies at the time of work related injury, in which provided for work related injuries, and coverage to compensate for time unable to work PLAINTIFF was medically restricted from returning to work for a period extending over 30 calendar days. DEFENDANTS denied such compensation and entitlement of PLAINTIFF coverage and benefits during restriction period, causing a further financial hardship.

¶       Texas Workforce Commission Unemployment Commission delegated A PERCEIVED unbiased discretionary powers to the DEFENDANTS and allowed the employer and insurance carrier, both DEFENDANTS, to decide if they would pay for the injury compensatory damages, which were denied. Implicates government agency delegated their duties to a party in the suit, presenting a conflict of interest.

¶       Insurance carriers paid reimbursement for hospital deductible, required physician visits, physical therapy and prescriptions but did not compensate PLAINTIFF for being injured due to work-related injury. or compensated nothing else that was defined in the coverage of the policy.

¶       The payment from Insurance to hospital denotes the validity of the injuries PLAINTIFF sustained and thereby entitling PLAINTIFF all inferred benefits of such insurance coverage. To deny the PLAINTIFF such benefits is discriminatory.

¶       DEFENDANTS of insurance carrier mishandled medical information to avoid disbursing funds entitled to PLAINTIFF.

¶       It is believed that the insurance, medical, hospital, physicians, and injury claim applications and other documents were turned into security instruments that were placed into private equity firms for secured financial values, and furthering the profits and unjust enrichment of the DEFENDANTS. These documents are made in the name of PLAINTIFF but have been concealed from PLAINTIFF, and benefits from such use of

these documents or instruments have deprived PLAINTIFF.

¶       PLAINTIFF was required to attend doctors, assigned by DEFENDANTS, who knowingly and intentionally prescribed and administered medicines that were clearly marked in PLAINTIFF chart to likely have an adverse affect on biology, hormones, and chemical structures. In particular a steroid shot was given without prior notice, waiver, or consent. In addition to steroid in pill forms that had more adverse side effects than therapeutic or medical relief on PLAINTIFF.

¶       DEFENDANTS switched out "physical therapist", without prior notification, approval, or consent from PLAINTIFF, wherein this "physical therapist 'CHRIS'",  seemed to be an agent of some sort, having very little medical or anatomy knowledge and in sessions, continuously asked questions hyper-focused about PLAINTIFF mental state, finances, aptitude and academics levels, and personal family history. ALSO,  on several occasions, "CHRIS" was forcibly attempting PLAINTIFF to consent to EMDR, an eye movement desensitization and reprocessing psychotherapy that is controversial within the psychological community.

¶       This infers PLAINTIFF "needed" psychotherapy for traumatic work related event injury, while simultaneously denying PLAINTIFF unemployment, disability, and insurance coverage benefits on the basis that injuries were "pre-exsisting" or "non-existent","non compensatory" without reason for why injuries was deemed non compensatory.

¶       The prescribed amount of physical therapy paid for was not enough, as PLAINTIFF currently and visibly suffers from rounded shoulders, suffered posturing, and periodic bouts of pain in the several points of localized injury areas from the events in fact with extreme measure that periodically immobilizes the PLAINTIFF. These episodes or flares of pain are unpredictable and un-ceasing. PLAINTIFF medicates with over the counter remedies where avail.

¶       DEFENDANTS, on multiple occasions accessed, obtained and engaged in mishandling

personal, sensitive, and identifiable information.

¶      It is believed DEFENDANTS collected monies entitled to PLAINTIFF for injuries and temporary loss of wages and work, and retained or held such monies for direct profits of DEFENDANTS, instead of disbursing to injured PLAINTIFF.

¶      DEFENDANTS concealed such record, disbursement, and other applicable data that so deprived PLAINTIFF of the true extent of the benefit or monies such entitled to PLAINTIFF.

¶      Defendants, SAG-AFTRA HEALTH CARE AND PENSION FUND/ NATIONAL BOARD OF DIRECTORS/ AND NATIONAL BOARD OF TRUSTEES had a duty to examine and determine a fair and reasonable remedy to make performer was the recipient of the disbursed benefits of the plan, even by exhausting all means, resources, and available powers and authority to protect the contractual and fiduciary duties, benefits, and provisions of the Union Performer, the PLAINTIFF.

¶      It is the duty of the Health Care and pension plan administration to allocate and disburse monies, benefits, credits earned after membership termination, and to provide statements of last covered dates.

¶      DEFENDANTS SAG-AFTRA Trustees and Directors have a duty to make whole any performer harmed as a result of negligence on a signatory set, and shall provide adequate and equivalent restoration and recovery to performers harmed on set; DEFENDANTS failed to do such, and adamantly refused to come to agreement for the issues that carry grounds for lawful relief and recourse.

¶      DEFENDANTS terminated membership of PLAINTIFF after having reported unlawful and adverse actions, also including disputes and claims set forth here within.

¶      DEFENDANTS allege termination was based on:  "Unpaid Membership dues".

¶      PLAINTIFF was not properly notified of any such unpaid or past due membership dues.

¶      PLAINTIFF had no required contribution or membership lapse, failure to pay, or payment arrangements of dues, prior to reporting the unlawful and adverse actions of employers.

¶      Because of termination, the earning threshold for the healthcare and medical plans,

pensions plans, and other investments/retirement plans were halted and terminated coverage.

¶     Ordinarily, the earnings on commercial with proper classification would have been enough to cover membership dues, health and pension thresholds, and credits for the years the advertisement was in original distributions and concurrently renewal cycles.

¶     PLAINTIFF was blacklisted, prevented from being hired on signatory sets, prevented Union benefits access, deemed with a "do not hire", "piranha", shunned and ostracized from industry events, gatherings, casting calls, and classes happened before membership termination in 2018.

¶     Union failed to notify Performer, membership had been terminated.

¶     DEFENDANTS engaged in defamation, professional and reputation damage, and in so inflaming such untrue statements made to hurt the ability of hiring of PLAINTIFF in the industry with remarks such as PLAINTIFF "being difficult to work with".

¶     DEFENDANTS worked together and encouraged the isolation of PLAINTIFF from other Union Members, implementing "cancel culture" and effects, irrevocably damaging PLAINTIFF stage name and professional reputation, ability to gain union commercial or television work.

¶     As a direct and proximate result of these material breaches of contractual obligations by all DEFENDANTS, including INDIVIDUAL DEFENDANTS, in each respective participation, has caused damage and additional compensation remains due and owing as described herein.

¶     The performance given by PLAINTIFF induced incredible excitement and promise from the ad agency, producers, and other representatives OF Proctor and Gamble,until the report of injuries were filed with SAG-AFTRA, as instructed by representatives of SAG-AFTRA to complete by Performer.

¶     PLAINTIFF received An email entitled, "Release of Talent" from this commercial, from the Producer, and yet it all the usages found thus far, PLAINTIFF image and stunt performance is shown in each type of cut, (:15sec, :30sec, and 60sec)"form of distributions", which were used in the United States, in foreign countries, on social media outlets/platforms, and other distributions not known to the performer, yet. PLAINTIFF was never "edited out", of any form of the commercial, shown in a single shot, as a principal actor

performing a stunt, portraying the United States Army.

¶       PLAINTIFF was told the commercial was pulled from distribution and therefore was not entitled to residuals, or any other future payments, which would typically garner between $150,000-$1,000,000 for one full cycle usage contract, on a Class A distribution, of this level with wild spots and hundreds of markets of distribution, plus super bowl ad slots projected.

¶       DEFENDANTS in fact DID NOT pull the advertisement from distribution. And, in fact, DEFENDANTS did distribute the original cycle and concurrent renewal distributions, for a collective of eight (8) years.

¶       DEFENDANTS controlled and concealed the reporting and correct classification of PLAINTIFF to avoid paying PLAINTIFF wages, income, fees, rights, licensing, compensation, and residuals

¶       Producers communicated to defendants "SAG-AFTRA", A DESIRE FOR FUTURE USAGE AND IF Plaintiff was willing to negotiate these rights, before offering an adequate address and remedy and settlement for pending monies, fees, charges, abuses, and offenses alleged with factual evidence in this suit brought forth herein with direct adverse and egregiously malicious intent and financial harm against the PLAINTIFF.

¶       It is believed DEFENDANTS will continue to trespass against the PLAINTIFF Estate, if DEFENDANTS are not held responsible for their harmful actions in such a manner as to dissuade DEFENDANTS from continuing to profit unjust enrichment and securities in the name of the PLAINTIFF with no benefit to PLAINTIFF.

¶       It is believed the DEFENDANTS have and will continue to engage in these harmful behaviors against other citizens, whether employees or consumers, if not held responsible for their harmful actions in such a way that will dissuade the DEFENDANTS from continuing to discriminate and harm others at large.

¶       PLAINTIFF income loss was significant for calendar years 2015-2023, wherein the DEFENDANTS engaged in unauthorized distribution without pay to PLAINTIFF.

¶       Total lifetime job and profession theatrical career loss is significant and damaged beyond repair.

¶      DEFENDANTS confirmed damage to professional name, by suggesting to re-join the union under a different name, after paying "astronomical past membership dues".

¶      DEFENDANTS, SAG-AFTRA, failed to verify renewal paperwork with verifiable income reporting requirements, before allowing Producers to re-distribute without proper authorizations, for eight consecutive years covering the entirety of calendar years of 2016 through 2023.

¶      DEFENDANTS engaged willingly in not correct the bookkeeping and accounting records of employees for a span of eight years. These inaccurate reports were submitted knowingly by DEFENDANTS under penalty of perjury to such agencies as the I.R.S. Secretary of Treasury, and other employee income reporting agencies.

¶      DEFENDANTS had knowledge of these facts and events;

¶      DEFENDANTS voluntarily accepted and retained these conferred benefits;

¶      DEFENDANTS concealed material facts from PLAINTIFF relating to commercial advertisement usages and distributions, renewal cycles, and role classification.

¶      The circumstances are such that it would be inequitable for DEFENDANTS to retain the benefits without paying the full value thereof to PLAINTIFF.

¶      The material facts were concealed from the PLAINTIFF which delayed the discovery of DEFENDANTS full extent of wrongdoings and deprived knowledge relating to entitlements including but not limited to, performance fees, performer's amenities, residuals, union recognized stunt accreditation, and any other entitlements.

¶      Plaintiffs reallege and incorporate paragraphs above as if set forth herein.

¶      This equitable claim is asserted as an alternative to the other counts and consistent with conditions where an adequate remedy at law is lacking.

¶      PLAINTIFF conferred a direct benefit to DEFENDANTS by providing professional on camera services , including stunt services, with respect to Proctor and Gamble company products, specifically the

"TIDE" line of products.

¶ DEFENDANT, GAMUT CAPITOL MANAGEMENT, INC, engaged in organized concerted efforts with other DEFENDANTS to divert, misappropriate, and re-assign monies belonging to PLAINTIFF, and then set those monies into the private equity markets by use of Social Security number, CUSIP numbers, name, Union Identification numbers, or other identifying and sensitive information of PLAINTIFF, unbeknownst to PLAINTIFF.

¶ DEFENDANTS OF GAMUT CAPITOL MANAGEMENT, INC are controlled, associated, aligned, in cohorts with other named DEFENDANTS of this suit.

¶ From a financial position, as a result of unauthorized distributions of this commercial, DEFENDANTS Proctor and Gamble, specifically the Tide line of products, exponentially increased product revenues and sales, attracted key investors, gained organic growth through influence opf PLAINTIFF image and enjoyed an upgraded financial status, all of which ultimately lead to the important increased market value in the NASDAQ market, reflecting in years mid 2017-2023, making a direct correlation with the promotion of this commercial advertisement and the Tide product  itself, and the company's upswing and positive impact of increased, organic, and repeated sales during the years of unlawfully distributing PLAINTIFF performance in more than 500 plus markets internationally per cycle period, per year.

¶ It is believed that the DEFENDANTS have intentionally and willingly engaged in unauthorized usages of other commercial performers, in other states, whether in the union or not, and those performers may not know how to execute lawful remedy.

¶ DEFENDANTS acknowledge of these facts and direct benefits of profits in the multi-millions.

¶ DEFENDANTS voluntarily accepted and retained these conferred benefit(s) to the detriment of the PLAINTIFF.

¶ DEFENDANTS,  Proctor and Gamble, concealed information, material facts, from PLAINTIFF relating to product sales, classifications, roles, payments, residuals ensuring PLAINTIFF is deprived from

discovering the true value of the conferred benefit(s) had not been paid.

¶    DEFENDANTS, SAATCHI & SAATCHI, NY, concealed information, material facts, from PLAINTIFF relating to product sales, classifications, roles, payments, residuals ensuring PLAINTIFF is deprived from discovering the true value of the conferred benefit(s) had not been paid.

¶    DEFENDANTS, SAG-AFTRA, concealed information, material facts, from PLAINTIFF relating to product sales, classifications, roles, payments, residuals ensuring PLAINTIFF is deprived from discovering the true value of the conferred benefit(s) had not been paid.

¶    The circumstances are such that it would be inequitable and unjust for DEFENDANTS to retain the benefits without paying the full value thereof to PLAINTIFF.

¶    WHEREFORE, PLAINTIFF, demand judgment against DEFENDANTS for each respective harm, liabilities, for damages, prejudgment interests, costs, reasonable attorney fees, and any other relief this court may deem appropriate.

¶    DEFENDANTS have proven dishonorable, and it can be concluded DEFENDANTS cannot be trusted, without lawful enforcement and motorization by the Courts or Attorney General, or General Inspector, or other such federal authority, to pay all back, current, and future monies owed or to come by lawful terms of settlement in the awarded judgment of this suit.

¶    DEFENDANTS, specifically, Proctor and Gamble, has an extensive history of an egregiously high volume of reported incidents of harm and settlements of discrimination against employees, and consumers

¶    DEFENDANTS appear to not take the offenses seriously, in which the collective DEFENDANTS at whole, continue to exhibit a behavior of taking advantage and continued discrimination of minority and protected classes, and to which those consistent adverse actions have a direct negative impact on the PLAINTIFF and the trust and safety of the public at large.

¶    A request and motion for proportionate punitive damages be administered in such a manner as to enforce the integrity of the law, and ensure the whole of the collective DEFENDANTS do not engage in discriminatory actions of any kind, whether to employee, or consumer in the future.

¶ By virtue of equitable considerations, Plaintiffs are entitled to pursue recovery of damages and other relief from liable parties whom worked in organized and strategic maneuvering to abuse positions of powers, defraud the PLAINTIFF by means of administrative and financial abuses, and retaliation for reporting factual, unlawful and harmful events on a signatory set, in a workplace, that led to injury, humiliation, discrimination, harassment, loss of wages, income, and compensation, exploitation, and irreconcilable damages to stage name, rights of publicity, trademark and copyright infringement, fraud, personal and profession defamation, loss of past, current, and future commercial and signatory work, gender pay inequalities, disparity, disparagement, blacklisting, whistle-blower protection violations, denied compensatory payments when required not to work as a direct result of the sustained injuries, loss of health benefits, pension and retirement benefits, union members benefits, deprived of stunt credit accreditation, deception by paperwork, other such benefits that may be concealed from PLAINTIFF, damages unlawful usages of excessive and extreme distributions that led to direct profits and unjust enrichment of DEFENDANTS.

¶ PLAINTIFF performance for Tide's "Loads of Hope"/"Brandwagon" commercial advertisement proved instrumental in promoting Tide, Proctor & Gamble, the United States Army, women and diversity in the United States Army, inspiration of everyday women, especially minority or women of color empowerment globally, and the promotion of healthy and hygienic daily habits. This influential effect had a direct increase in sales for not only the product shown in the commercial of this claim, but various other products with the "Tide" brand name, because the consumers trust PLAINTIFF to review, critique, and choose great companies with trusted brands of quality to work with, that can be trusted.

¶ Along with the 8 years of unauthorized usages and the expressed desire to gain future licensing and usages rights, amplify the value, market influence, and purchase power of PLAINTIFF performance and image lends to the advertisements that garnered multi-billions in direct product sales profit for DEFENDANTS, primarily, Proctor and Gamble by use of global distribution of this commercial exhibiting PLAINTIFF stunt

performance.

¶       This particular commercial advertisement has proven to be immensely valuable, marketable, and of high financial benefit and interest to the DEFENDANTS, who appear to want to continue to use this particular commercial and messaging. DEFENDANTS have concealed and deprived PLAINTIFF of any benefit inured from use of this particular commercial over a collective eight calendar years.

¶       Product analysis, experts, and earnings report prior to 2016 when PLAINTIFF was exhibited on this particular commercial advertisement reflect sales exponentially increased by substantial volumes, which is consistent with other major brand companies whom utilized Jazzy Fosho as an on camera principle performer with their respective products, an indication of a very successful trajectory in the commercial and film venues.

¶       PLAINTIFF maintains a record of being a Union Member, of professional status, in good standing, paid in full of contributions and membership dues, wherein there is no record of any outstanding or

¶       PLAINTIFF was entitled to receive future residuals payments and future renewal cycle payments upon distribution of the commercial advertisement.

¶       Because the recordkeeping and applicable data was within DEFENDANTS sole possession, DEFENDANTS accepted the fiduciary role to account for and properly make transfer to PLAINTIFF in accordance with the agreements under circumstances giving rise to the existence of trust among the parties.

¶       DEFENDANTS failed to properly handle the payments, residuals, renewals, fees and instead retained funds and assets to which PLAINTIFF was entitled.

¶       These material facts were concealed from PLAINTIFF and which delayed the discovery of DEFENDANTS wrongdoings and deprived PLAINTIFF from the knowledge relating to the entitlement of payments, residuals, renewals, fees.

¶       Because of the nature and complexities of the payments, residuals, renewals, fees related evaluations, PLAINTIFF are entitled to a detailed accounting of DEFENDANTS books and records necessary to complete an appropriate residual analysis, as well as evaluate the applicable data relating to equal gender pay, performance fees, and other such monies owed to PLAINTIFF.

¶       Once the accounting is completed, PLAINTIFF seeks an award of damages and all other appropriate relief due pursuant to 2015, 2016, 2018, and 2023 commercial contract agreements, including attorney fees.

¶       WHEREFORE PLAINTIFF DEMANDS an accounting and judgment against DEFENDANTS for damages, prejudgment interest, attorney fees, costs, and any relief this court deems appropriate.

¶       DEFENDANTS failed to deliver payments of all wages, income, compensation, fees, and residuals due pursuant to Commercial Contracts 2015.

¶       By failing to perform fiduciary roles and duties, DEFENDANTS, breached Union Membership Contract of 2014-2015, Stunts Contract or Theatrical Commercial and Television Contracts 2015, and Commercial contract agreements of 2022-2023.

¶       As a direct result of these material breaches of contract, PLAINTIFF has been detrimentally damaged and additional compensation remains due and owing.

¶       Plaintiffs delivered written notices of contractual and federal law breaches and provided opportunity for DEFENDANTS to cure for more than 30 days. Despite such notice, DEFENDANTS failed to timely cure its breaches of agreement, and therefore PLAINTIFF is allowed to recover attorney fees in the event of a dispute arising from the contracts. Demand is hereby made for reasonable attorney fees, costs, and any relief this court deems appropriate.

¶       WHEREFORE, Plaintiffs, demand maximum penalty judgment and punitive damages against DEFENDANTS, for each respective liabilities, for all damages that shall be allowable under these precedents set here in, whether be it, prejudgment interests, judgment costs, reasonable attorney fees, relief, remedy, restitution, interest, equities, and any other award to PLAINTIFF this court may deem appropriate.

¶       As the applicable company product sales and revenues information is in the sole possession and control of DEFENDANTS, Proctor and Gamble, it is Proctor and Gamble's responsibility and obligation in

essential fiduciary duty and good faith to monitor benchmarks of hired performers, and account to Plaintiffs with respect to the accomplishment of such benchmarks under circumstances giving rise to the existence of trust among the parties.

¶ However, DEFENDANTS Proctor and Gamble, as did all other DEFENDANTS to some extent, failed to do such and concealed material facts from Plaintiffs that deprived them from discovering the volume of contractual breaches, as did the Ad Agency DEFENDANT, SAATCHI & SAATCHI, NY whom is a lower holding of parent company of both entities, DEFENDANT Publicis Groupe.

¶ Defendants acknowledge of these facts are true and occurred

¶ The circumstances are such that it would be inequitable and unjust for Defendants to retain the benefits of this type of performer abuses and vulnerable exploitation, without maximum punitive damages and paying the full value thereof to PLAINTIFF.

¶ WHEREFORE, PLAINTIFF demands judgment against all DEFENDANTS, and seeks appropriate relief, exclusive of attorney fees, costs, and any other relief this court deems appropriate.

¶ ALL DEFENDANTS, had ample time to fix these matters and took no steps in good faith to do so, mainly by not correcting the role status and deceptive paperwork and reporting preventing otherwise due income to performer.

¶ PLAINTIFF delivered written notices of the contractual breaches and other egregious concerns and provided opportunity for all DEFENDANTS and parties to cure for more than 30 days. Despite ongoing requests for settlement and other monies owed, all DEFENDANTS have failed to timely cure its breaches and violations as bound by of such mentioned agreements.

¶ As a direct result of the multitude of DEFENDANTS simultaneous repeated retaliations and adverse actions was significantly effected the overall quality of life, as well as produce multiple hardships and trauma based anxiety.

¶ Demand is hereby made for an award of reasonable attorney fees and costs relating to this action for damages, prejudgment interest, default judgment, remedy, restitution, reasonable attorney fees, expert

fees, data analytical services, curt or filing fees, injunctions, writs of enforcement, exemplary, and punitive damages, and any relief this Court deems appropriate to bring forth just and equitable wholeness of PLAINTIFF.

¶    Defendants acknowledge of these facts are true and occurred

¶    The circumstances are such that it would be inequitable and unjust for DEFENDANTS to retain the benefits of this type of performer abuses, vulnerable exploitation, and deprivation of PLAINTIFF without maximum punitive damages and paying the full value thereof to Plaintiffs.

## DEMAND FOR JURY TRIAL

¶    PLAINTIFF hereby demands trial by jury on all issues in and relating to this complaint that are so triable as a matter of right and just.

## MOTION AND NOTICE FOR DISCOVERY

¶    PLAINTIFF reminds this court, DEFENDANTS, took great lengths to control, conceal, omit, and deceptive information from the knowledge of the PLAINTIFF, thereby making it harder to seek lawful counsel and remedy. As the extent of the harm and damage cannot be assessed until the full scope of omissions, concealment, and truth of the defrauding of the PLAINTIFF is discovered.

¶    PLAINTIFF hereby demands pre-trial discovery of all relevant documents, data, communications, reporting, accounting, appropriations, distributions, transfers, and any other applicable information needed to hear and properly adjudicate this suit.

¶    PLAINTIFF hereby demands from Defendants, specific motion of discovery and original documentation detailing of all pre-production materials outlining exact ideas, shots/types of photography projected for, intended actions of performers, and any other known or unknown materials relating or discussing, including but not limited to expressed handwritten, computer generated, sketched, drawn, email, or other digital forms of communications of the Defendants, the intent of use for the particular photography style of each performer, preproduction records, post production records, on set records, all communications regarding talent

and safety and protocol of the shoot date, including any instructions. Communications regarding medical appointments, pay, wages, insurance policies, premiums, and reimbursements, notes from physicians, physical therapists, chiropractors, facilities, hospital, administration, dispositions, documents containing PLAINTIFF signature, residuals, negotiations, checks, termination documents, council decisions, agenda items, memos, injury, injury reports, all shared medical information and whom it was shared with, production of documents, statements, identification of potential DEFENDANTS or witnesses, earnings reports, audit reports, income reporting files, all documents relating to tide loads of hope and/or brandwagon commercial, any bonds, titles, sureties, or securities created in the name of the PLAINTIFF or from the transfer of earnings or monies belonging to PLAINTIFF, any previously omitted or concealed information relevant to bringing just adjudication to the hearing of this suit, profit reporting, sales and profit analysis, communications in group chats, messaging, or other digital transmissions, summary, usage, distributions reports.

¶    PLAINTIFF does not object to reciprocal discovery.

¶    We ask that the veil of indemnification, obscurity, and anonymity for any DEFENDANTS and any business structures used to engage, orchestrate, attempt to, defraud the PLAINTIFF, and allow for auditing of any trust, estates, or private equity accounts, firms, or holding companies that made it possible to transfer monies owed to PLAINTIFF by DEFENDANTS, and request all DEFENDANTS, and any persons or entities not yet known to PLAINTIFF whom participated and facilitated these willful unlawful actions, these Court administer lawful punishment to full extent of the law.

¶    In the interest of the public trust and safety PLAINTIFF request for full auditing of FROM SUCH GOVERNING FEDERAL AGENCIES THAT defendants SUBMIT TO, INCLUDING THE I.R.S., S.E.C., F.T.C., T.D.L.R., S.O.S., S.O.T., U.C.C., U.C.S., T.W.C., and any other such appropriate agencies. And where found for cause, apply appropriate measures of consequence and enforcement.

¶    As DEFENDANTS, so disrespectfully noted, "[PLAINTIFF] MAY BE SLIGHTLY RETARDED", PLAINTIFF asks this Judge and these Courts to take consideration of the limitations of PLAINTIFF disabilities whether educational, genetic, medical, or trauma-based and not punish PLAINTIFF because of disabilities, and do excuse the lack of perfection of technicality, grammar, timing, legalese, or

organization of information, and by this consideration not too discriminate against the PLAINTIFF with any adverse decision or action, including but not limited to, dismissal of this suit, claims, or relief to be granted, before or during the hearing, adjudicating, and granting relief in this suit to PLAINTIFF.

**BACKGROUND/HISTORY:**

By way of professional history, JAZZY FOSHO created and maintained a successful commercial, fashion, television, and motion picture career, contributing to major influential brand and commercial advertising campaigns, featured appearances on television, theatrical movies, and major product distributions including publication and fashion events, and other various products that garnered and exceeded projected revenue for each company. Gaining initial experience as an executive assistant at an established talent agency in Austin, Texas for a collective nine years. That history lead to developing strong networks and industry connections, nationwide, dealing specifically with casting directors, directors, producers, and other entertainment administrative staffs.

JAZZY FOSHO signed her first agency contract for commercial, television, and film in 1998. As a long standing, consistently working actor, brand ambassador, professional model, and brand influencer, in several markets of the United States, JAZZY FOSHO's trusted influence and purchase power played instrumental engagements and promotions that generated direct profits for a variety of companies including fortune 100 companies, creating a reputable and trusted reputation for being highly marketable, distinguishable, pleasant, with a distinctive presence, whom is easy to work with, effective and prepared, and consistent in exceeding expectations of performances and or promotional impacts including performances, sales, purchase influence, and direct profits as a matter of persona, charisma, pure suggestion by identifying and relating to curated needs of the consumer or audience, with the tenacity to effortlessly exuding positive attitude no matter the extent of conditions or extreme elements presented with. Having a strong ethic for working with quality and good faith dealing productions.

Even the main producers, clients, and executive teams of the Tide commercial in question, specifically, expressed genuine enthusiasm and positive overlook on the quality of how the final ad spot came out, and specifically JAZZY FOSHO's single shot principle stunt performance, having gained approval from all client personnel relating to this advertisement, and in that was a main focal point of the commercial.

Continued unauthorized usages and distributions conclude the footage of commercial is of considerable value to the DEFENDANTS.

Not just a union member in good standing, but also JAZZY FOSHO had been elected to the Union's Critics Committee for 2 years, revered for being a fair, honest, accurate, and just critic of union peers. A position JAZZY FOSHO took seriously and with great commentary discernment.

## **JUDGMENT:**

¶      PLAINTIFF request a thorough yet expeditious award of judgment, considering the continued retaliations of DEFENDANTS have extended for eight calendar years.

¶      PLAINTIFF request that if any DEFENDANT shall not answer to the due process of service or opportunity to cure, default judgment be granted to PLAINTIFF.

¶      PLAINTIFF demands that if default judgment shall occur, the awards be in subject to the proposed terms set forth within, and any other relief and injunctions and this court deems just and appropriate.

¶      PLAINTIFF requests that if any DEFENDANTS are incapacitated or deceased, judgment be granted to PLAINTIFF to recover damages from the Estate of the incapacitated or deceased DEFENDANT.

¶      PLAINTIFF requests a summary judgment if this Court finds the substantiated claims brought forth herein, to be of merit, substance, and egregious intent from that of DEFENDANTS.

¶      PLAINTIFF REQUESTS summary judgment be granted where it is so convenient as a result of DEFENDANTS non cooperation, avoidance, or otherwise obstruction of these courts bringing relief to PLAINTIFF.

¶ In good faith to settle these matters in full, and to not have to re-visit the claims set forth herein in the future, PLAINTIFF sets forth reasonable settlement terms to bring adequate relief for all injury, harm, damage, trespasses, discrimination, retaliations, exploitation, trademark and copyright infringement, violation of civil liberties and rights, loss, loss of career, defamation, debts, disparities, inequalities, racketeering and fraud.

¶ Wherein all settlement terms are approximate and proportionate to the adverse actions against PLAINTIFF, and where as each defendant is culpable and able to pay such amounts, and where in DEFENDANTS are unable to make such judgment amounts immediately available in full, with writ of enforcement and agreed under penalty of perjury, PLAINTIFF is willing to accept installments, with interest and fees, until full balance is satisfied, as a judgment creditor, with enforcement.

## SETTLEMENT TERMS

¶ DEFENDANT PROCTOR AND GAMBLE SHALL pay one hundred billion dollars ($100,000,000,000.00), in lawful monies, to PLAINTIFF.

¶ DEFENDANTS, SAG-AFTRA SHALL pay one billion dollars ($1,000,000,000.00), in lawful monies, to PLAINTIFF.

¶ DEFENDANTS, SAG-AFTRA HEALTH CARE PLAN AND BOARD SHALL pay the total cost of lifetime coverage, with all inferred benefits, including lifetime health, dental, 401k, IRA and Pension and the sum of thirty-three million ($33,000,000.00) dollars, in lawful monies.

¶ DEFENDANTS, SAATCHI & SAATCHI, NY SHALL pay the sum of two hundred and ten million dollars (210,000,000.00), in lawful monies, to PLAINTIFF

¶ DEFENDANTS EXTREME REACH/TALENT PARTNERS, and DEFENDANTS CAPS, INC., SHALL each pay the sum of ten million (10,000,000.00) dollars in lawful monies.

¶      DEFENDANTS, GALLAGHER-BASSETT, LLP SHALL pay the sum of two Billion dollars (2,000,000,000.00), in lawful monies, to PLAINTIFF.

¶      DEFENDANTS, ATX ORTHO, SHALL pay the sum of twenty-two million dollars (22,000,000.00), in lawful monies, to PLAINTIFF.

¶      DEFENDANTS, PUBLICIS GROUPE, SHALL pay the sum of one hundred billion dollars (100,000,000,000.00), in lawful monies, to PLAINTIFF.

¶      DEFENDANTS, B-REEL, LLC, SHALL pay the sum of fifty- nine million dollars (59,000,000.00), in lawful monies, to PLAINTIFF.

¶      DEFENDANTS, GAMUT CAPITAL MANAGEMENT SHALL pay the sum of seven hundred and seventy-seven ($777,000,000.00) million dollars, in lawful monies to PLAINTIFF.

¶      DEFENDANTS, STEEN CHIROPRATOR SHALL pay the sum of seven ($7,000,000.00) million dollars, in lawful monies to PLAINTIFF.

¶      DEFENDANTS AMF-SAG-AFTRA SHALL pay the sum of all monies owed through use of ssn, or member id, and in addition to ten million ($10,000,000.00) dollars to the PLAINTIFF

¶      INDIVIDUAL DEFENDANTS [holding an executive, director, or board office] SHALL pay the sum of thirty two million (32,000,000.00) dollars, in lawful monies, to the PLAINTIFF.

¶      INDIVIDUAL DEFENDANTS [NOT holding an executive, director, or board office] SHALL pay the sum of eight million (8,000,000.00) dollars, in lawful monies, to the PLAINTIFF.

¶      ALL controlling DEFENDANTS shall TRANSFER OF ALL BONDS, SECURITIES, TITLES, properties earned by use of PLAINTIFF identifiable information

¶      ALL DEFENDANTS SHALL submit written and recorded apology to PLAINTIFF.

¶      ALL DEFENDANTS SHALL agree Payments will be made upon agreed day, date, and time, willingly, according to schedule agreed upon in these terms, without delay, distractions, or need for enforcement, or be it subject to writ of enforcement and leins and/ or subject to late fees and

penalties, and company agrees to never fail to uphold an annual payment of judgment awards if on installment agreement.

¶    ALL DEFENDANTS SHALL agree PLAINTIFF WILL retain all rights, benefits, inurments, usages, licensees, copyrights, trademarks, of performance and PLAINTIFF likeliness in commercial advertisement and entire story from casting to judgment, and PLAINTIFF will remain at liberty to share, sell, keep, extend, license, or deny usage to all facts, events, experience, and commentary regarding first hand experience of filming this commercial and all the adverse actions and effects that proceeded.

¶    ALL DEFENDANTS SHALL agree to an automatic penalty fee of one hundred million ($100, 000, 000.00),  if commercial is used in the future, in any form, without expressed consent and authorization, and if with out having received payments covering all usage, distributions, including Artificial Intelligence or altered forms of media mediums. Penalties to be paid in full, upon demand, To be made within 10 days of discovery of unauthorized usage of any kind.

¶    ALL DEFENDANTS SHALL cease and desist to harass, retaliate, intimidate, attempt to recruit, employ, hire, contract or otherwise engage, contact, communicate with, stalk, deceive, or intend to harm, injure, or kill PLAINTIFF.

¶    ALL DEFENDANTS SHALL agree to not contest the terms set forth and to respect the opinions of this Court.

¶    ALL DEFENDANTS SHALL agree to accept their judgments, punitive damages, and imprisonment where applicable.

¶    ALL DEFENDANTS SHALL pay for any court, process of service, attorney fee, expert, legal, security detailing or protections, any and all late fees, penalties, original invoice plus a forty-three percent (43%) admin/interest/processing fee fees incurred as a result of filing, hearing, adjudicating, discovering, concluding this suit, along with all relief and damages award by this Court..

¶        Each amount of settlement per defendant is (a) equivalent to the gross unjust enrichment gained by said DEFENDANT: (b)  adequate to cover all trespasses and damages each DEFENDANT took part in respective to their role in the scheme; (c) an amount as to not bankrupt any or all DEFENDANT (d) in an amount as to punish for the egregiousness of harm or injury to PLAINTIFF (e) in such an amount as to dissuade the actions of DEFENDANTS to occur in the future (f) an amount in such with enforcement, will prevent any further claim or rise of claim to any facts, events, or injury set herein. It would be grossly inequitable for DEFENDANTS to retain the benefits without paying full value thereof to PLAINTIFF.


¶        PLAINTIFF demands, if this Court so finds appropriate the terms set forth above in "SETTLEMENT TERMS", to award PLAINTIFF judgment against DEFENDANTS, in whole; where as multiple defendants acted together to intentionally, maliciously, and egregiously discriminate, deprive and defraud the PLAINTIFF, and as such amounts set forth find the demand for damages above be appropriate and adequate to settle the wrongdoings, charges and facts of this suit in full, against each DEFENDANT whom participated, without whom not participating the extent of concealment and trespasses would not have been as damaging.

## MOTION AND NOTICE TO CONTINUE IN FORMA PAUPERS

¶        PLAINTIFF respectfully moves this honorable Court for leave to proceed in this matter without payment of fees, costs, or security.

¶        Attached is an AFFIDAVIT in support of this motion and notice to proceed in *forma pauperis*.

¶        Such granting shall not bring any prejudice to the PLAINTIFF nor change the jurisdiction of the PLAINTIFF.

## REQUEST FOR ATTORNEY FEES

WHEREFORE, PLAINTIFF demands judgment against all DEFENDANTS, and seeks appropriate relief, exclusive of attorney fees, costs, and any other relief this court deems appropriate.

DATED        JANUARY 15, 2024                        PREPARED BY:

Ray: Jasmine, Beneficiary, in special appearance
901 12th Street, suite 188,
Hempstead, Texas [77445]
(512) 897-4211, jazzyfosho@hotmail.com



12:51

outlook.live.com/mail/0/

You forwarded this message on Tue 1/17/2023 4:26 PM

**Jazzy Fosho**

To: jessica.vazquez@sagaftra.org
Tue 5/3/2016 5:27 PM

60503_153923        20160503_153936        20151211_180220
3 - 2 MB        JPG - 2 MB        JPG - 4 MB

5 attachments (11 MB)

Jessica,
Thank you for speaking with me at length today.

Here is the compensation itemization they had me create. And below is the official statement their lawyer requested of me, again unbeknownst to me of any investigation or pre/arbitration.

Also, attached are the pay stubs. I have received 3 checks. If you will note, they only adjusted the background pay, they did not report my work hours as an on camera principle stunt performer; Which now effects my health care eligibility.

Along with this, is a picture of me in the towel finally provided, where we were hosed down and striped out of uniform, (during the 2nd time this was requested).

Let me know if you need any other information.

Thank you,
Jasmine Ray
512-897-4211

Saved on: Wed 3/9/2016 10:56 PM

↩ ˅    Reply





EXTREME    111 West Jackson Boulevard, Suite 1525    Chicago, IL 60604

Remittances to: Talent Partners  212-727-1800

Employer of Record for Withholdings and U.C. Insurance: Talent Partners Commercial Services, LLC

STATE U.C.#  097530548

Check No: 35873258
Check Date: 02/11/2016
Pay Ending: 02/11/2016
Agy / Invoice: DWNY / B66205

| | | |
|---|---|---|
| Employee Name | Jasmine Ray | |
| Address | 9110 Bluff Springs Rd | |
| | Austin TX 78744 | |

SSN: XXX-XX-7062
Fed I.D.:
GST#:
PST#:

| | Area | M/S | Exmpt | Fixed% | |
|---|---|---|---|---|---|
| Fed.: | FD | S | 3 | .00 | Agent Name/Code |
| Res. St.: | TX | S | 3 | .00 | Address |
| Res.Cty.: | | | | | |
| Wrk St.: | TX | | | | |
| Wrk Cty.: | | | | | |

CORP FSO:

| | | | | |
|---|---|---|---|---|
| Ad Agency | Saatchi & Saatchi | Advertiser | Procter & Gamble | |
| Agency Code | DWNY | Original ID# | PGTX725900H | |
| Commercial ID | PGTX7439000H | Edit Version ID | PGTX7439000H | |
| Media | TV | Union / Local | SAG / DAL | |
| Date 1st Service | 12/11/2015 | Category | P / Principal Performer | |
| First Fixed Cycle | 12/10/2015 | Camera | ON | |
| First Air Date | | Contract Year | 13 | |
| 1st Overscale % | .00 | | | |
| 2nd Overscale % | .00 | | | |

| | |
|---|---|
| Product | Title |
| Commercial Title | Brandwagon |
| Maximum Period of Use | 09/09/2017 |
| Made for Cable Only | No |
| Made for Spanish | No |
| AFM Contract Numbers: . | |
| AFM Leader | |
| AFM Dub Date | |

## USE-TYPE INFORMATION

| Payment Type | Session | | Usage Type | Session |
|---|---|---|---|---|
| Cycle Dates | 12/11/2015-03/10/2016 | | Use Wks | 13 |

| Description | Units | Rate | Amount | |
|---|---|---|---|---|
| Spot (Days=1) | 1 | 627.75 | 627.75 | Holiday Pay  N |
| | | | | |
| Total | | | 627.75 | |
| Manual Override | | | 238.40 | |

## TAXES AND DEDUCTIONS

| Description | Current Amount | Y-T-D Amount |
|---|---|---|
| Federal Income Tax | .00 | .00 |
| Social Security Tax | 18.23 | 48.02 |
| Misc Deduction/I&E | .00 | .00 |
| **Pre-Tax Deductions** | | |
| MPTRP | .00 | .00 |
| Permanent Charities | .00 | .00 |
| **After Tax Deductions** | | |
| Tax Liens/Garnishments | .00 | .00 |
| Union Dues | .00 | .00 |
| Trust | .00 | .00 |
| Direct | .00 | .00 |
| Wire | .00 | .00 |
| Total | 18.23 | 48.02 |

## EARNINGS

| Description | Current Amount | Y-T-D Amount |
|---|---|---|
| Payment | 238.40 | 627.75 |
| Misc Payment | .00 | .00 |
| Reim Exp (Wardrobe, Cartage, Supplies, Other) | .00 | .00 |
| Health & Welfare | .00 | .00 |
| GST/HST | .00 | .00 |
| Monies Due TP | | |
| Gross Wages | 238.40 | 627.75 |

## COMMENTS

Supplement-Talent Shot As Principals
Supplement-Shot As Principal

## CHECK TOTALS

| Description | Current Amount | Y-T-D Amount |
|---|---|---|
| Gross Wages | 238.40 | 627.75 |
| Deductions | -18.23 | -48.02 |
| Net Wages | 220.17 | 579.73 |

EXTREME

131 West Jackson Boulevard, Suite 1828
Chicago, IL 60604

Inquiries to: Talent Partners 212-757-1800

Employer of Record
for Withholdings
and U.C. Insurance

Talent Partners
Commercial Services, LLC

STATE U.C.# 097530548

Check No: 35876174
Check Date: 02/12/2016
Pay Ending: 02/12/2016
Agy / Invoice: DWNY / B66278

| | | | | | Area | M/S | Esmpt | Fixed% | |
|---|---|---|---|---|---|---|---|---|---|
| Employee Name | Jasmine Ray | SSN: | XXX-XX-7062 | Fed.: | FD | S | 3 | .00 | Agent Name/Code |
| Address | 9110 Bluff Springs Rd | Fed I.D.: | | Res. St.: | TX | S | 3 | .00 | Address |
| | Austin TX 78744 | GST#: | | Res.City: | | | | | |
| | | PST#: | | Wrk St.: | TX | | | | |
| | | | | Wrk Cty.: | | | | | |

**CORP FSO:**

| | | | | | |
|---|---|---|---|---|---|
| Ad Agency | Saatchi & Saatchi | Advertiser | Procter & Gamble | Product | Tide |
| Agency Code | DWNY | Original ID# | PGTX72590901H | Commercial Title | Brandwagon |
| Commercial ID | PGTX74390001H | Edit Version ID | PGTX74390001H | Maximum Period of Use | 09/09/2017 |
| Media | TV | Union / Local | SAG / DAL | Made for Cable Only | No |
| Date 1st Service | 12/11/2015 | Category | P / Principal Performer | Made for Spanish | No |
| First Fixed Cycle | 12/10/2015 | Camera | ON | AFM Contract Numbers: | |
| First Air Date | | Contract Year | 13 | | |
| 1st Overscale % | .00 | | | AFM Leader | |
| 2nd Overscale % | .00 | | | AFM Dub Date | |

## USE-TYPE INFORMATION

| Payment Type | Session | | Usage Type | Use Wks | Session |
|---|---|---|---|---|---|
| Cycle Dates | 12/11/2015-03/10/2016 | | Use Wks | 13 | |

| Description | Units | Rate | Amount | Holiday Pay | N |
|---|---|---|---|---|---|
| Sess (Days=1 ) | 1 | 627.75 | 627.75 | | |
| | | | | | |
| Total | | | 627.75 | | |

## TAXES AND DEDUCTIONS

| Description | Current Amount | Y-T-D Amount |
|---|---|---|
| Federal Income Tax | .00 | .00 |
| Social Security Tax | 48.03 | 96.05 |
| Misc Deduction/I&R | .00 | .00 |
| | | |
| **Pre-Tax Deductions** | | |
| MPTRP | .00 | .00 |
| Permanent Charities | .00 | .00 |
| | | |
| **After Tax Deductions** | | |
| Tax Liens/Garnishments | .00 | .00 |
| Union Dues | .00 | .00 |
| Trust | .00 | .00 |
| Direct | .00 | .00 |
| Wire | .00 | .00 |
| | | |
| Total | 48.03 | 96.05 |

## EARNINGS

| Description | Current Amount | Y-T-D Amount |
|---|---|---|
| Payment | 627.75 | 1255.50 |
| Misc Payment | .00 | .00 |
| Reim Exp (Wardrobe, Cartage, Supplies, Other) | .00 | .00 |
| Health & Welfare | | |
| CNT/PEXT | .00 | .00 |
| Monies Due TP | .00 | .00 |
| Gross Wages | 627.75 | 1255.50 |

## COMMENTS

Start Adjustment
Start Adjustment

## CHECK TOTALS

| Description | Current Amount | Y-T-D Amount |
|---|---|---|
| Gross Wages | 627.75 | 1255.50 |
| Deductions | -48.03 | -96.05 |
| Net Wages | 579.72 | 1159.45 |



On Tue, Jul 18, 2023 at 10:58 AM Jazzy Fosho <jazzyfosho@hotmail.com> wrote:

Hi Ms. Waleska,

Are you ok? I haven't received a response from you, nor the updates I was supposed to get last Friday.

Please inform me,
Thanks,
Jazzy

**From:** Waleska Rivera <waleska.rivera@sagaftra.org>
**Sent:** Wednesday, July 12, 2023 12:57 PM
**To:** Jazzy Fosho <jazzyfosho@hotmail.com>
**Subject:** Re: Update

Greetings Ms. Jazzy!

Yes, we have a call scheduled this Friday with the production company and payroll representative (I just got out of the hospital yesterday, I had severe kidney issues last week but strong medications and prayers helped, amen! ) to review the details of our report for all the monies owed to you for the unauthorized use for the year 2022.

I've also asked the membership representative to provide us with the information to get your status back to active and to provide insight on what occurred previously as I would like to resolve and wrap both matters up this week for you.

As I mentioned previously, your claim is MY priority to resolve and I thank you very much for your patience and amazing email it really meant a lot to me especially the prayers, as I am a spiritual person as I sense that you are as well.

Expect an email update from me THIS FRIDAY afternoon.

Kind regards,
Wally

On Wed, Jul 12, 2023 at 12:40 PM Jazzy Fosho <jazzyfosho@hotmail.com> wrote:
Good afternoon Ms. Waleska,

Do you have anything for me?

Thank you,

Jazzy Fosho

**From:** Waleska Rivera <waleska.rivera@sagaftra.org>
**Sent:** Tuesday, July 18, 2023 11:18 AM
**To:** Jazzy Fosho <jazzyfosho@hotmail.com>
**Cc:** A Jazzy Fosho Foundation <Ajazzyfoshofoundation@yahoo.com>
**Subject:** Re: Update

Greetings Ms. Jazzy,

Apologies for the late reply, as we have been dealing with the strike activities yesterday.

The production representative agreed to compensate you for the unauthorized usage for the year of 2022 and we are asking for them to provide us with the total amount to provide to you to confirm if this meets with your approval. What we are trying to avoid is for them to send a check that does not meet the necessary compensation for the unauthorized usage.

Additionally, they have asked if you would be willing to negotiate a new contract in the event that they decide that they would like to run the commercial sometime in the near future?

I have asked for the details to be provided as soon as possible and we are also requesting an upgrade in the status from background to OCP and the compensation to match. Please let me know if you would be willing to negotiate with them?

And last but not least, I have asked the membership division to provide the details and she is pulling the notes as she has mentioned to me that she does not show a record of you being "expelled" or removed from the union. By any chance would you happen to have a date as to the last time that you were required to pay dues? That will help her confirm what occurred during that date range as to change your status in their systems.

I've removed the others from the e-mail chain as I do not want to fill up their respective inboxes.

Thank you,

Wally

**Waleska "Wally" Rivera**

Business Representative

Commercials & Corporate/Educational & Non-Broadcast Contracts



**SAG·AFTRA.**

3470 N.W. 82nd Avenue, Suite 780

Doral, FL 33122-1024

(305) 690-7677 Direct ext. 7090

waleska.rivera@sagaftra.org

**National SAG-AFTRA COVID-19 Updates and Resources click on link below:**

https://www.sagaftra.org/news-events/news/covid-19

**From:** Waleska Rivera <waleska.rivera@sagaftra.org>
**Sent:** Wednesday, July 5, 2023 7:12 AM

**To:** Jazzy Fosho <jazzyfosho@hotmail.com>
**Subject:** Re: Update

Greetings and Jazzy,

Hope all is well with you.

I was just released from the hospital yesterday and am catching up on your claim and it seems that there should be payment processed for you very soon.

In relation to the other matters, membership status etc. I will follow up with that department today upon getting back into the office and report back.

Thank you for your kind sentiments and God bless you.

Best regards,
Wally



(i) You forwarded this message on Tue 9/12/2023 3:25 PM

**AB**   Amanda Barlow                                    ...
To: Jazzy Fosho
Fri 4/21/2017 2:25 PM

Ms. Ray,

A carrier's exchange will be submitted upon scheduling of a benefit review conference.

Your claim is not closed so there is no statement of closure to provide.

*Gallagher Bassett is committed to delivering exceptional service and we are here to help. Please contact my supervisor* Laura_Lewis@gbtpa.com *with any questions.*

**Regards,**

**Amanda Barlow | Resolution Associate, Level II** | Gallagher Bassett
**D:** 972-728-1116 | **T:** 866-544-0486 | **F:** 972-931-6256
**E: amanda_barlow@gbtpa.com**
Alternate Point of Contact: **Laura Lewis | 972-728-1088**

. . .

**JF**   Jazzy Fosho                    Fri 4/21/2017 2:15 PM
Ms. Barlow, Actually, I have a right to copies of eve...

↩ ⌄   Reply



← Back    Archive    Move    Delete    Spam    • • •

~~Thank you Ms. Tracy, for your continued help,~~

Jasmine Ray

**From:** Tracy Hyman <Tracy.Hyman@sagaftra.org>
**Sent:** Friday, July 22, 2016 4:11:24 PM
**To:** Jazzy Fosho
**Subject:** RE: TIDE LAWYERSFw: Tide resolutions/Invoice itemization

Jasmine,
Actually under the Commercials Contract, a stunt performer is paid under a Principal Employment Contract. It is not reported differently either to payroll or to the Pension & Health plan. Yes a physical contract should be given on set, however, the language on the check establishing you as a principal performer is in fact sufficient under our contract.

Again, TV/Theatrical is quite different.

Tracy

**From:** Jazzy Fosho [mailto:jazzyfosho@hotmail.com]
**Sent:** Friday, July 22, 2016 4:08 PM
**To:** Tracy Hyman <Tracy.Hyman@sagaftra.org>
**Subject:** Re: TIDE LAWYERSFw: Tide resolutions/Invoice itemization

Yes, over the course of the 5 months of this dispute, I have continued to educate myself on the 2 separate contr



 **Waleska** Rivera    ...
To: Jazzy Fosho;  A Jazzy Fosho Foundation
Wed 4/5/2023 9:43 AM

Thank you so much for your well wishes Ms. Jazzy, I really appreciate it!

It looks like we've been able to make some headway with the production as it seems that you were not the only performer who wasn't paid for usage in 2022. We've requested an audit of the production and all performer contracts to review that you were all properly categorized as well.

My supervisor and I will be contacting the production again tomorrow to insure that we receive the audit information as soon as possible as this production company has a pending Union production that will be placed "on hold" until they comply with our request. Each day that they are on hold is a loss in terms of their production budget as they have already contracted their performers so we have leverage in that aspect.

I will keep you updated and posted on any developments and again thank you very much for your patience.

Kind regards,
Wally

...

 **Jazzy Fosho**                Wed 4/5/2023 8:41 AM
Thank you, Ms. Waleska. I'll look forward to updat...

  Reply all



2:30

outlook.live.com/mail/0/

+   ⑩   ⋮

Jazzy Fo Show - Claim #133319 - Claim ...
PDF - 4 KB

## Claim Report

### Claim Summary

Claim Number:
00133319

Sponsor:
Sig:
Comm ID: E0187932
Comm Title: TIDE30

| Use Type | Cycle | Comm ID | Comm Title | Detail | Total Units |
|---|---|---|---|---|---|
| | | | | | 3000 |
| Cable | - | E0187932 | TIDE30 | 47 networks | 3000 |
| Cable | - | E0187932 | TIDE30 | 65 networks | - |
| Class A | - | E0187932 | TIDE30 | 195 uses | - |
| Class A | - | E0187932 | TIDE30 | 11 uses | - |
| SYN/Bounce | - | E0187932 | TIDE30 | 86 markets incl. CHI & NY | 163 |
| Wild Spot | - | E0187932 | TIDE30 | 170 markets incl. CHI, LA & NY | 270 |
| Wild Spot | | E0187932 | TIDE30 | | |

3/17/2023   6:36:13 AM

Page 1 of 20

**INVOICE**

From

Jasmine Ray

JRMG Consulting Firm
9110 Bluff Springs Road
Austin, Texas 78744

To

Phil Weiss

Fridman Law Group, PLLC
287 Spring Street, New York, NY 10013
Tel 646 775 4194 | Mobile 513 678 9265 | Fax 646
304 1030
phil@fridmanlawgroup.com |

| | | Invoice # | 0000001 |
| | | Invoice Date | 03/10/2016 |
| | | Due Date | 03/10/2016 |

| Item | Description | Unit Price | Quantity | Amount |
|---|---|---|---|---|
| Service | Failure to Notify of hazardous/stunt/wet/smoke work conditions | 500.00 | 1.00 | 500.00 |
| | Failure to provide adequate wardrobe; primarily notating the broken helmet and ill fitting uniform despite additional options present and avail for use on site | 500.00 | 1.00 | 500.00 |
| | Failure to provide Stunt Coordinator | 1000.00 | 1.00 | 1000.00 |
| | Failure to host safely meeting or provide proper instructions to safely complete stunt sequence/action requested | 1000.00 | 1.00 | 1000.00 |
| | Failure to provide protective gear | 5000.00 | 1.00 | 5000.00 |
| | Humiliating and dehumanizing Hose down in wardrobe/uniform with water hose outside in public (2 times) | 25000.00 | 2.00 | 50000.00 |
| | Strip down to semi nude [underwear], in public, specifically on school grounds, [school for the deaf], during active school hours, with students and school personel present, as well as shoot representatives and other actors (2 times) | 100000.00 | 2 | 200000.00 |
| | Failure to provide adequate changing rooms | 1000.00 | 1.00 | 1000.00 |
| | Failure to provide adequate/appropriate coverings in between wardrobe changing; no access to personal clothing in between changings | 500.00 | 1.00 | 500.00 |
| | Lunch in semi nude[underwear] wet/muddy attire; lack of clothing produced unwarranted sexual environment in workplace; uncomfortable and dangerous work/lunch condition that created an offensive and humiliating work environment throughout 2nd half of day for performer | 100000.00 | 1.00 | 100000.00 |
| | Failure to provide Professional hair and makeup services | 500.00 | 1.00 | 500.00 |
| | Failure to provide Medic on set; failure to provide immediate medical attention for instantaneous bruising and bodily injury | 5000.00 | 1.00 | 5000.00 |
| | Bodily injury | 5000.00 | 1.00 | 5000.00 |
| | Loss of potential/applicable work | 3500.00 | 1.00 | 3500.00 |
| | Out of pocket medical expenses | 248.00 | 1.00 | 248.00 |
| | Incidentals and damages, specifically but not limited to, unknown video or still photography of semi-nude state of performer by any unknown party, causation of "whistleblowing","blacklisting", or/with possibility of lack of gainful employment within given industry and local of residence, potential health or medical issues unforseen at this time in direct effect to injuries sustained on this shoot, any other damages that may arise in connection with this shoot | 100000.00 | 1.00 | 100000.00 |

[+ New Line]

Invoice Notes

| | | Subtotal | 473748.00 |
| | | Total | 473748.00 |
| | | Amount Paid | 0.00 |
| | | Balance Due | $473748.00 |

Back    Archive    Move    Delete    Spam    ...

Jasmine Ray
512-897-4211

**From:** Jazzy Fosho <jazzyfosho@hotmail.com>
**Sent:** Thursday, March 10, 2016 11:17:18 PM
**To:** phil@fridmanlawgroup.com
**Subject:** Fw: Tide resolutions/Invoice itemization

Phil,

Thank you for your patience, while I thought about the initial offer of compensation, that was made last night.

I itemized the invoice based on each of the conditional aspects. It felt easiest to compartmentalize it this way, so as to base the demand amount on the basis of what actually occurred/conditions experienced versus a general estimation.

I look forward to confirming this settlement with you and closing this matter out.

Ms. Jasmine Ray
512-897-4211
Jazzyfosho@hotmail.com

---

**From:** Jazzy Fosho <jazzyfosho@hotmail.com>
**Sent:** Thursday, March 10, 2016 3:52:03 PM
**To:** Jazzy Fosho
**Subject:**

Attached are screenshots taken from the Screen Actors Guild Handbook of "Stunt and Safety Digest", as provided by The National Stunt &

68°F  Mostly c



*Retail*

**U.S. POSTAGE PAID**
PME 1-Day
HEMPSTEAD, TX 77445
JAN 19, 2024

77701

**$2.35**

RDC 07

R2306Y152064-04

 



EI 438 421 560 US

**UNITED STATES POSTAL SERVICE** ®   **PRIORITY MAIL EXPRESS** ®

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)   PHONE (512) 897-4211

Ray, Jasmine
901 12th Street
Hempstead, Texas 77445

CLERK, U.S. DISTRICT COU...
**RECEIVED**
JAN 2 2 2024

**DELIVERY OPTIONS (Customer Use Only)**
☑ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available)*
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)   PHONE ( )

United States District
Clerk Jack Brooks Federal
Building and United States
Courthouse
300 Willow Street Suite 104
Beaumont, Texas 77701
ZIP + 4® (U.S. ADDRESSES ONLY)

☎ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
⚖ $100.00 insurance included.

➤ PEEL FROM THIS CORNER

LABEL 11-B, MAY 2021   PSN 7690-02-000-9996

**PAYMENT BY ACCOUNT (if applicable)**
USPS® Corporate Acct. No.   Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**
☑ 1-Day   ☐ 2-Day   ☐ Military   ☐ DPO
PO ZIP Code: 77445   Scheduled Delivery Date (MM/DD/YY): 1-20-24   Postage: $28 75/XX
Date Accepted (MM/DD/YY): 1-19-24   Scheduled Delivery Time ☐ 10:30 AM ☐ 12 NOON   Insurance Fee   COD Fee
Time Accepted: 12:55 ☐ AM ☐ PM   Return Receipt Fee   Live Animal Transportation Fee
Weight: 1 lb   Flat Rate ☐   Special Handling/Fragile   Sunday/Holiday Premium Fee   Total Postage & Fees: $28 75/XX

**DELIVERY (POSTAL SERVICE USE ONLY)**
Delivery Attempt (MM/DD/YY): 1-20-24   Time: 200 ☐ AM ☐ PM   Employee Signature: Bus Closed/...
Delivery Attempt (MM/DD/YY)   Time ☐ AM ☐ PM   Employee Signature

   

**UNITED STATES POSTAL SERVICE** ®

This package is made from post-consumer waste. Please recycle – again.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express® shipments. Misuses may be a violation of federal law. This package is not for resale. EP13F © U.S. Postal Service; July 2022; All rights reserved.